## Case No. 4,596.

### The EXPRESS.

[1 Blatchf. 365;[1] 6 N. Y. Leg. Obs. 401; 1 Am. Law J. (N. S.) 289.]

Circuit Court, S. D. New York. Nov. 12, 1848.[2]

---

[1] [Reported by Samuel Blatchford, Esq., and here reprinted by permission.]

[2] [Reversing Case No. 4,598.]

Francis B. Cutting and Theodore Sedgwick, for libellant.

Washington Q. Morton and George R. J. Bowdoin for claimants.

NELSON, Circuit Justice. This is a libel filed by the owner of the yacht Mist, against the steamboat Express, for damage occasioned by a collision occurring in the port of New York.

The Mist was lying at anchor off Whitehall dock, at the usual anchorage ground for vessels of that description. The steamboat had just taken in tow, at one of the North river piers, a canal boat heavily laden with coal, for the purpose of carrying her around to the East river, there to be taken, with other boats, in tow to Albany. The canal boat was towed by a hawser some fifty fathoms in length, fastened to the stern of the steamboat, and, in coming around from the North to the East river, the latter passed on the inside of the Mist, between her and the Battery. As she came around Castle Garden, the boat in tow took a sheer out into the river, which the captain and hand on board of her, with all their exertions at the helm, could not break, by reason whereof she came in contact with the Mist, head on, abaft the forward chains, staving in her planks and timbers and doing other serious injury. The captain of the tug was warned by the master

of the tow, at the time she was lashed to the stern, that the boat steered badly, especially when heavily laden, as she then was, and a request was made that she should be taken alongside, instead of being towed at the stern; but this was refused, and a hawser was flung to the master of the tow to lash her astern. The tug was not under the command or direction of the master of the tow, but under the command and direction of her own captain and hands. The tow was steered under the direction of her captain. The collision took place about five o'clock p. m. on the 13th of October 1845, in calm and pleasant weather, the tug having in tow no other vessel than the canal boat. The sheer of the tow commenced, according to the clear weight of the evidence, as soon as the tug straightened up in her course from the North river piers, or as she was coming around Castle Garden, and it continued widening from the track of the tug, notwithstanding the exertions of the captain and hand on board of the tow, until the collision occurred.

There is very little doubt, if any, that this sheer was seen by the hands on board of the tug, soon after it commenced, and that it was also seen that it was not in the power of the master of the tow, with all his efforts, to break it; and yet no measures were taken to arrest the sheer, or avoid the danger which must have been apparent. On the contrary, the tug continued her course at a speed of from six to eight miles an hour. It is true the hawser was paid out from the tug some ten or fifteen fathoms, but this was not for the purpose of arresting the sheer, but of increasing it, so that the tow might be enenabled to pass the Mist on the opposite side from the tug. Under these circumstances, though the master of the tow may have been in fault in not exhibiting proper skill and attention in steering his vessel, and is, therefore properly responsible for the collision, the captain of the tug was also in fault for not taking earlier measures to avoid it by stopping his vessel. There can be no reasonable doubt, upon the evidence, that the collision might have been avoided, if proper attention had been paid to the navigation of the tug; and, after her captain had been warned that the tow steered badly, and was requested, for that reason, to take her alongside, it was his duty, in passing around among the vessels lying at anchor in the bay, to have kept the strictest watch over the tow, and to have seized the first moment of apparent danger for the purpose of arresting the sheer and preventing the collision.

An idea seems to have been entertained on board of the tug, that if she was not in fault as respected her own navigation, that is, if she was so navigated as to avoid coming in contact herself with the damaged vessel, no responsibility could be properly attached to her; but that it must rest exclusively upon the vessel in tow, to whose bad navigation the collision was immediately attributable.

This is a mistake. The tug is also responsible, if the damage could have been avoided by the exercise of reasonable skill and attention on her part. The navigation of a tow is dependent upon and controlled by the navigation of the tug, and it may not unfrequently happen, that the joint action of the hands on board of both vessels is essential to prevent the happening of a collision between the former and a third vessel. In all such cases, at least, there exists a common obligation to make every reasonable effort to avoid the danger, and a common responsibility in case of neglect.

The case at bar is one of this description. Whether the sheer happened, at first, by the fault of the master of the tow, or not, it is quite plain that he and the hand on board were unable to break it, and bring the vessel back to her proper track, without the aid and co-operation of the tug. They might have been rendered in season to have avoided the disaster, if proper attention had been given to the condition of the tow. Such attention should have been bestowed, especially after the warning that had been given in respect to the bad navigable qualities of the tow. By consenting to take charge of her under these circumstances, and particularly by taking her in tow by a stern hawser after the admonition, the captain of the tug became measurably responsible for her navigation, or, at least, for extraordinary care and attention to her navigation in the passage from river to river among the vessels in the bay.

The business of towing vessels by steamboats is comparatively modern, and has become extensive upon all the navigable rivers of the country. The obligations and responsibilities arising out of this kind of navigation, and properly resting upon the respective vessels concerned, are novel and peculiar, and there may be some difficulty in assigning to each vessel its proper measure of responsibility—a difficulty that is intrinsic and arises out of the peculiar relations which the respective vessels bear to each other in the course of the navigation. In all cases where the tug is under the direction and control of the master and hands on board of the tow, there is no difficulty in assigning to the latter a responsibility for all the damage that may happen through the fault of either vessel. The converse of the proposition will hold equally good, where the tow is under the exclusive direction and control of the tug. But, where there is a divided command and direction in the navigation of the vessels, there must necessarily be, in some measure, a divided and several responsibility assigned to each. What that measure shall be, is a question of some difficulty. In the case before us, the helm of the tow was under the direction of her captain, but all other means used in her navigation were under the absolute control and direction of the master of the tug. Such is understood to be the common relation which these different vessels bear to

each other in the business of towing up and down the North river.

Now, although the tow and her master and owners are properly chargeable for any injuries that may happen by reason of neglect or unskilfulness in her management in the course of the voyage, it by no means follows that the tug is free from fault. Her power over the navigation of the tow is paramount and controlling, and a corresponding responsibility necessarily attaches. Therefore in all cases where the proper and reasonable exercise of that power can be interposed, for the purpose of arresting and avoiding the impending injury, she is bound to exert it faithfully, and should be held answerable in case of neglect. Her whole duty is not discharged when she is so navigated as to avoid committing immediately the injury herself. She must guard so far as fairly lies within the power she exercises over the colliding vessel, against the danger of any injury being committed by her.

In this very case, if the master of the tow had had the control of the motive power himself, he might have avoided the collision, notwithstanding the sheer of his vessel. Seeing and apprehending the danger, he would, as would have been his duty, have stopped the tug at once, and thus have arrested the dangerous consequences of the sheer, whether it arose from the fault of the helmsman or of the navigable qualities of the canal boat. The motive power being entirely under the control of the tug, this duty devolved upon the master and hands of that vessel, and the neglect to discharge it properly, under the circumstances and in the emergency, fairly enough subjects her to accountability for the damage that happened.

For these reasons, the decree below must be reversed, and the case be referred to the clerk to ascertain and report the amount of the damage sustained.