CAROLINE V. CASEY, The (POUNDER v.). See Case No. 2,421a.

---

## Case No. 2,424.

### The CAROLUS.

[2 Curt. 69.] [1]

Circuit Court, D. Massachusetts. Oct. Term, 1854.

COLLISION—TOW AND SAIL—FAULT OF PILOT.

1. For a collision occasioned by the misconduct of a pilot, employed by the owner, not under any compulsion by statute, the vessel is liable.

[Cited in Pope v. The R. B. Forbes, Case No. 11,275; Camp v. The Marcellus, Id. 2,347; The China v. Walsh, 7 Wall. (74 U. S.) 70; The Merrimac, 14 Wall. (81 U. S.) 203.]

2. A vessel towed by a steamer is bound to take the needful precautions not to run into a small sailing vessel ahead, which has not steerage way by her sails, and is moved only by sweeps.

[Cited in Nelson v. The Goliah, Case No. 10,106; The Express, 46 Fed. 864, 865, note.]
[See Stretch v. The Margaret, 2 Fed. 255; Bissell v. The Alexander, 3 Fed. 671.]

[Appeal from the district court of the United States for the district of Massachusetts.
[In admiralty.]

E. D. Sohier, for appellant.
Mr. Scudder, contra.

Before CURTIS, Circuit Justice, and SPRAGUE, District Judge.

CURTIS, Circuit Justice. This is an appeal from a decree of the district court in a cause of collision. [Case unreported.] The facts, as they appear to me upon the proofs, are, that about three o'clock, p. m., on the seventh of December, 1853, the schooner Levant, of the burden of sixty-five tons, left the lower outside berth on the north side of the T wharf in Boston, having her mainsail and jib set and her foresail partly hoisted; and hav-

---

[1] [Reported by Hon. B. R. Curtis, Circuit Justice.]

ing been swung clear of the wharf, with a range line, was rowed by her sweeps, assisted slightly by a very light draft of air from the westward, in a south-easterly direction; and in the space of about ten minutes had proceeded about three hundred feet from the wharf. The ship Carolus, of the burden of five hundred and eighty-one tons, having a steam tug lashed to her larboard side, left the end of Lewis's wharf, distant five hundred and eighty-seven feet from the T wharf, soon after the Levant left the T wharf, and, towed by the tug, proceeded also in a south-easterly direction, passed inside of a schooner at anchor off the end of Commercial wharf, and in attempting to go outside of the Levant, her main yard caught the leach rope of the Levant's mainsail, slewed the Levant round into collision with the ship, stove her boat, injured her mainsail, and inflicted other damage. The Levant, at the time of the collision, had not such steerage way as to be fairly under command of her helm. The ship had steerage way and could be handled, though not with much rapidity and precision. On this state of facts it could hardly be doubted that the ship was in the wrong. Two vessels, being on the same course, the one ahead dependent on sweeps and sails, in almost a dead calm, and the other coming up with her by the aid of steam, it is clear the latter should seasonably take such measures as to avoid a collision. And the counsel for the claimant, without controverting this position, has endeavored to show that some other facts existed which relieve the ship from the imputation of negligence.

It is pleaded, that when the Carolus left her berth at Lewis's wharf, there was no obstacle in the way, except the schooner which lay at anchor off Commercial wharf; that it was then judicious and proper for the ship to go inside of that schooner; that while doing so, the Levant came suddenly out of the dock, and stood directly across the path of the Carolus; that it was then too late to go outside the schooner at anchor, and there was not depth of water to keep a course as far southerly as the ship was then steering; and that, consequently, the only thing which the Carolus could do, was to go outside of the Levant; and that this would have been successfully accomplished if the crew of the Levant had coöperated in the attempt, by putting her helm to the larboard, and her main boom to starboard, and had hauled away the jib and stopped sweeping. That they did none of these things, and to their neglect, therefore, the collision is attributable. But I am not satisfied of the correctness of these positions. In my judgment the evidence shows, that the Levant came away from the wharf some minutes before the Carolus started; that she was where she ought to have been seen and regarded by the Carolus, when the latter left Lewis's wharf; that the Levant did not come out of the dock suddenly, but in a usual and prudent man-

ner. And I attribute it as a fault on the part of the Carolus, that, either the Levant was not seen till after the course inside the schooner at anchor had been taken, or if seen, that the Carolus attempted a hazardous manoeuvre, which was unsuccessful and caused the damage. Nor do I find, upon the proofs, that the omission of the people of the Levant to coöperate in the movement of the Carolus was negligence. I think they had reason to believe the Carolus would keep her course and go inside of them, until it was too late to do any more than they did. It is true the pilot of the Carolus thought there was not at the moment, (an hour's flood,) depth of water to go inside; but this was not known to those on board the Levant; and has been ascertained now only by careful soundings. I think, therefore, they were not in fault.

It was pleaded in the answer, that the Carolus was under the sole charge and direction of a pilot, duly licensed to act in that capacity by the public authorities of the state of Massachusetts. If the pilot in charge of this ship had not been selected and employed by the owner, but had been received by the master in obedience to a requisition of law, enforced by a penalty, then, under the authority of Carruthers v. Sydebotham, 4 Maule & S. 77, and The Maria, 1 W. Rob. Adm. 95; The Agricola, 2 W. Rob. Adm. 10, the owners would seem not to be liable for the misconduct or mismanagement of the pilot. But in this instance the pilot has testified that he was employed by the owner of the ship; and no such case is made by the answer as would compel an owner to receive a pilot on board under the statute laws of Massachusetts. The case stands, therefore, upon the general rule of the law of the admiralty, unaffected by statute provisions; and this renders the vessel liable for a collision, attributable to the pilot's mismanagement. The case of The Neptune, 1 Dod. 467, is directly in point. and though this decision has been overruled by Sir William Robinson, in the case of The Protector, 1 W. Rob. Adm. 45, it was solely on the ground that the general admiralty laws had been superseded by an act of parliament, which had escaped the notice of Sir William Scott when he decided the case of The Neptune; and it is in terms stated, that the decision correctly declares the law as it stood before that act. The same rule, as held by courts of common law, may be found in Yates v. Brown, 8 Pick. 23, and the cases there cited. And in Smith v. Condry. 1 How. [42 U. S.] 28, it is said to be undoubtedly the law.

The result is, that the decree of the district court must be affirmed, with costs, and damages at the rate of six per centum per annum from its date.