## Case No. 12,558.

### The SCRANTON et al.

[5 Blatchf. 400.] [1]

Circuit Court, S. D. New York.   June 6, 1867.

COLLISION—TUG AND TOW—STEAMER — RESPONSIBILITY FOR PERIL—SIGNALS.

1. A steam-tug, with a heavy tow on her port side, was coming up along the Brooklyn shore, in an eddy, the tide being half ebb and strong in the river. A steamboat was coming down the river, and, when near the tug, their combined speed being ten or eleven miles an hour, starboarded her helm and sheered across the track of the tug, and then blew two whistles, and the tug ported her helm and slowed, and a collision ensued between the tow and the steamboat: *Held*, in a suit brought by the tow against the tug and the steamboat, that the latter was in fault, in these respects: (1) The danger of a collision was incurred before the two whistles were blown; (2) the vessels were too near to justify a call on the tug to starboard her helm; (3) the steamboat had no right, in the position of the two vessels, to do otherwise than port her

helm, or slow or stop till the tug had passed her.

[Cited in The Express, 46 Fed. 862.]

2. Any error in the movement of the tug at the time was not a fault, as the steamboat was responsible for the perilous condition in which the tug was placed.

[Cited in The H. P. Baldwin, Case No. 6,812.]

[Appeal from the district court of the United States for the Southern district of New York.]

This was a libel in rem, filed in the district court, by the owners of the canal boat McCord and her cargo, against the steamboat Scranton and the steam propeller William F. Burden to recover damages for a collision which occurred about eleven o'clock a. m., on the 9th of December, 1863, between the canal boat and the Scranton, in the East river, just below the Fulton ferry, on the Brooklyn side. The canal boat, heavily loaded with grain, was lashed to the port side of the propeller Burden, at the Atlantic docks, to be carried to pier No. 44, up the river, on the New York side. The Burden left the docks with her tow, about eleven o'clock a. m., and passed up, hugging the Brooklyn shore, in the eddy, or reflex tide, the tide in the river at that time being about half ebb and strong. The Scranton had started from Corlear's Hook, on the New York side, with two empty coal boats lashed to each side, and was coming down the river, and intending to cross over to the Fulton ferry, to take up another boat lying below the lower slip of the ferry. It was near this point, somewhat lower down, that the collision took place, the Scranton striking, nearly end on, somewhat a slanting blow, on the port side of the canal boat, while lashed to the Burden, breaking it in, and doing considerable damage. The district court condemned the Scranton and the Burden [case unreported], and the claimants of both of them appealed to this court.

Cornelius Van Santvoord, for libellants.
Freeman J. Fithian, for the Scranton.
Erastus C. Benedict, for the Burden.

NELSON, Circuit Justice. It is admitted by the captain of the Scranton, that he did not see the Burden till his boat was opposite the coal dock of Marston & Powers, which is the first dock above the Fulton ferry slips, and that the Burden was then about as far below the ferry slips as the Scranton was above them. The two vessels were, of course, near each other, and approaching at a combined speed of about ten or eleven miles an hour—the Scranton seven miles, and the Burden between three and four. While the two vessels were in this position and relation to each other, the Scranton made a movement to go in below the lower slip of the Fulton ferry, to take up the boat lying there, by fastening a line to the boat and backing, so as to tow her out into the river. As is apparent, in order to accomplish this movement, it became necessary for her to

---

[1] [Reported by Hon. Samuel Blatchford, District Judge, and here reprinted by permission.]

cross the track of the Burden with her tow, the Burden being but a few hundred yards below, and in a stage of the water in the river, the tide being half ebb, that could not fail to endanger an immediate collision. The captain of the Scranton, as if aware that this movement was inexcusable under the circumstances, seeks to avoid the error, and, at the same time, turn it against the Burden, by setting up that he gave notice to the latter, by blowing two whistles, that he intended to pass to the left.

One answer to this is, that the Scranton starboarded her track of the Burden, before she blew her whistles. This is stated in the answer and testified to by Morris, the wheelsman, with whom the captain was at the time. The danger of a collision was incurred by this movement, before the notice was given.

Another answer is, that the boats had approached each other too near to justify a call on the Burden to make the manœuvre, by starboarding her helm, to pass on the left. She had to come out of the eddy into a head tide, with a heavy tow on her port side, which required time and exposed her to danger, from the near proximity of the Scranton.

A third answer is, that, in the position of the two vessels, the Scranton had no right to insist upon a departure from the settled rule of navigation, when two vessels are meeting in opposite directions, that each shall port her helm and pass to the right. In the present case, it was the duty of the Scranton to have slowed or stopped till the Burden had passed her, or to have passed under her stern, instead of across her bow, in order to get at the boat she was after. I think the better opinion is, also, that the Scranton was not in shore, but considerably out in the river, when she undertook, by starboarding her helm, to cross the track of the Burden; that she was, under the circumstances, bound to keep out and pass on the right; and that it was gross error in navigation to make the movement which she admits was made. The weight of the proofs is, that the captain of the Burden did not hear the two whistles; and, if he had heard them, no time was given for the answer, as the change of course was taken by the Scranton before the whistles were blown. I think the Burden was justified, under the circumstances, in keeping her course, and that she adopted the only movement practicable for her at the time, to avoid the collision, namely, to port her helm and slow. Even if she erred, in the impending danger, it is not to be attributed as a fault, as the Scranton was responsible for the critical and perilous condition in which she was placed.

The decree below is affirmed as to the Scranton, and reversed as to the Burden.