THE EXPRESS. THE NIAGARA. THE N. B. STARBUCK. THE CHARM.

NEW YORK & C. MAIL S. S. CO. *v.* THE EXPRESS, THE N. B. STARBUCK, and THE CHARM.

NEW ENGLAND TERMINAL CO. *v.* THE NIAGARA, THE N. B. STARBUCK, and THE CHARM.

*(District Court, S. D. New York. June 24, 1891.)*

1. COLLISION—TUG AND TOW—JOINT RESPONSIBILITY.
    It having been found (44 Fed. Rep. 392) that there was fault in the navigation of the ship and tow (1) in not straightening down river, as required by law, with reasonable promptness; (3) because shortly before collision, when the N.'s course was really clear, she ported, in order to follow the tug, and thereby unnecessarily ran into the E.; and it appearing that the N. had a master and crew on board in the performance of their duties, her quartermaster at the wheel, receiving orders from her master, and that the latter alone gave the final order which precipitated collision, the pilot or master of the assisting tug along-side being also on the bridge, and concurring in the navigation,—*held*, that the officers of both the tug and tow were joint participators both in the navigation of the N. and in the above specific faults; that both tug and tow were therefore answerable to the E.; and that the N. could recover but half her damages.

2. SAME.
    What constitutes joint participation in the navigation of tug and tow considered, in reference to the language of BETTS, J., and of Mr. Justice CLIFFORD, in *Sturgis* v. *Boyer*, 24 How. 110; (opinion of BETTS, J., in note.)

In Admiralty. Collision; tug and tow participating.

*Carter & Ledyard,* for the Niagara.
*Wing, Shoudy & Putnam,* for the Express.
*Robert D. Benedict,* for the Starbuck and the Charm.

BROWN, J. In the former decision of the above causes, the Express was held without fault, (44 Fed. Rep. 392,) and the tugs Starbuck and Charm, which had the Niagara in tow, were held to blame. It did not seem necessary at that time to determine whether the Niagara, which was in tow of those tugs, and came in collision with the Express, should also be held to blame; but, it appearing that there is no community of interest between the tugs and the Niagara, and that the value of the tugs is insufficient to pay the damage caused to the two vessels by the collision, it is necessary to determine the question whether the Niagara is also chargeable with fault; for, if she is blamable as between her and the Express, she is liable to the Express, and cannot diminish to the latter's prejudice the fund derivable from the stipulation given by the tugs.

Most of the facts are stated in the former opinion. The navigation of the Niagara was held to be in fault (1) for unnecessarily going to the left-hand side of the East river channel, near Corlear's Hook, and continuing her heading towards the left, though bound for the New York shore; (2) not signaling or answering signals in time; and (3) for turning shortly before collision to the right, across the bows of the Express. For these faults, save the want of signals, I think the Niagara was at least jointly to blame with the tugs. As respects the giving of signals, it was held in the case of *The Einar,* 45 Fed. Rep. 497, 500, that on the failure of the tug to give signals, it was the duty of the tow to direct them to be given; and in *The City of Alexandria,* 31 Fed. Rep. 427, it was held the duty of the tow having whistles to sound them. By the first fault the Express was embarrassed as to the Niagara's intentions; by the last, after the danger was over if the Niagara had kept her course, collision became unavoidable. In both these faults the officers of the Niagara were active participants. The final order, "hard a-port," which precipitated collision, was given by the master alone, and the previous slow turning of the Niagara in straightening down river arose, at least in part, through not hard a-porting long before; and as to that the master had and exercised such control as he saw fit.

This case has no resemblance to that of *Sturgis* v. *Boyer,* 24 How. 110, because there the master and crew were not on board, and had no participation in the faulty navigation. It was the same as to want of participation in the fault in the case of *The John Fraser,* 21 How. 184. In the former case CLIFFORD, J., says expressly that—

"Both tug and tow are jointly liable when those in charge of the respective vessels jointly participate in their control and management, and the master or crew of both are deficient in skill, omit to take due care, or are guilty of negligence in their navigation." *The Mabey,* 14 Wall. 204, 211; *The Maria Martin,* 12 Wall. 44; *The Virginia Ehrman,* 97 U. S. 309, 313.

If any doubt could exist as to what was meant in *Sturgis* v. *Boyer,* by "jointly participating in the control and management," it would seem to

be removed by reference to the opinion of BETTS, J., in the court below, in which he had held the tow and tug jointly in fault, because, upon the facts in proof before him, he found that neither "vessel was strictly passive in the course pursued in its navigation, but, on the contrary, the officers of both took active and efficient part in directing and controlling the movements of the tug." * * * "The ship's company," he says, "had sole charge of her helm and sails; and the master of the tug gave directions from her deck concurrently for her navigation. * * * It cannot be said for the ship * * * that she did not participate with the tug in any voluntary action producing a collision. * * * The true doctrine subjects both tug and tow to responsibility to another vessel for injuries inflicted upon it by the joint action of the tow by means of their common fault." The facts were found otherwise in the circuit court and in the supreme court, viz., that "the ship was under the exclusive command and direction of the master of the tug, and that the ship's master was not on board, nor any crew, and that the mate did not in any way interfere with her navigation, but was otherwise employed." *The Scranton*, 5 Blatchf. 400; 24 How. 120, 121. The reversal was because the facts were otherwise than found by BETTS, J., and the almost identical language used by Mr. Justice CLIFFORD in the passage above cited in regard to a joint liability would seem to be drawn from the opinion of Judge BETTS, and to be designed to express concurrence with his views, in this respect, upon the facts as he had supposed and found them.

Stronger even than the facts assumed by Judge BETTS are the facts here, which show a joint participation in the navigation of the tow; and, if this were not to be held such a case, I hardly perceive how any case ever likely to arise could be construed as one of joint navigation; for the officers and crew of the Niagara were not only on board, but actively participating in her navigation. Her master was on the bridge, her quartermaster at the wheel, receiving his orders; and the very order that precipitated collision came from her master only. The pilot of the Charm was by his side, concurring in all his acts. It is plain, moreover, that the active co-operation of the officers and crew of the Niagara was necessary to the navigation of the ship, and that their help was expected and counted on by the tugs in her navigation. Besides those mentioned, others of the crew were stationed forward, as the master says, for any necessary emergencies. Without them, the ship would have been unseaworthy, for want of suitable equipment for safe navigation. *The Galatea*, 92 U. S. 439. It is manifest that the tugs neither had nor exercised exclusive management or control. This is plainly not a case like that of the towage of canal-boats, in which the tugs take, and are expected to take, the whole management of the tow into their own hands; but one of joint participation and direction. The captain, indeed, states that he considered the ship to be under the direction of the tugs and of the pilot of the Charm, who was on the bridge with him; but such an opinion, given after collision, for the purpose of exonerating himself and

[1] See note at end of case.

his ship, is outweighed by the circumstances and by his acts at the time. The evidence shows that the master and crew were all the time exercising their functions, and were no more relieved of them by the presence of the master of the Charm than if he had been a pilot taken on board, in which case the liability of the ship is well settled. *The China,* 7 Wall. 53. It was the duty of the master, as well as of the pilot of the Charm, to observe the statutory regulations made for the avoidance of collision, to straighten down river as soon as practicable, and not, in violation of the statute, to embarrass other vessels, nor run across their bows into evident collision. When the Starbuck made a move plainly leading to sure collision, it was the duty of the master to cut the hawser, and not port hard, as he did, in order to follow the Starbuck. A large steamer like the Niagara, nearly 300 feet long, with her master and crew on board, prosecuting and participating in her navigation for her own benefit and her owners', though in tow of a tug, is bound to take all needful precautions to avoid injury to others. This obligation is wholly independent of the question which is master and which is servant. This rule was recognized and enforced by the supreme court in the case of *The Civilta,* 103 U. S. 699. Both are bound to be vigilant, and to do all that prudence and skill can do to avoid the destruction of life and property by collision in navigation. Large vessels, by reason of their size, moreover, have practical control, in a large degree, of the tugs attached to them. *The Niobe,* 13 Prob. Div. 55; *The Doris Eckhoff,* 32 Fed. Rep. 555. They are rarely without their full complement of officers and crew, who continue their ordinary duties of navigation, as was evidently expected and done in this case. In maritime countries generally the tug is in such cases almost universally treated as the servant of the larger ship, which can direct and control her movements; and so Mr. Justice GRIER held in the case of *The Creole,* 2 Wall. Jr., 485, 512. But, whether this view be adopted here or not, the Niagara seems to me to be jointly answerable for this collision, within the strict line of cases from *Sturgis* v. *Boyer* downwards, because her master and crew participated, not only in her navigation, but in the two specific faults that directly brought about the collision.

Without commenting, therefore, upon the arguments submitted in regard to what was said in the case of *The Doris Eckhoff,* 32 Fed. Rep. 555, and without considering to what extent the principle on which *Sturgis* v. *Boyer* was decided, as respects the remedy against the ship *in rem,* has been modified by subsequent cases in the supreme court, or supplemented by many of its justices, including Mr. Justice CLIFFORD himself; to what extent its application to cases like the present would work injustice by absolving from liability the vessel that inflicts the injury; or to what extent it is incompatible with the general design of the act of 1851, (Rev. St. §§ 4283–4286,) which, since that case was decided, has been developed and expounded by the supreme court as an adoption, in a large degree, of the general maritime law of Europe, which, in the navigation of chartered ships by the owner's consent, though the owner does not stand in the relation of principal, or incur any personal liability, nev-

ertheless looks to the ship in case of her faulty navigation as the offending thing, which is at once the source of the wrong, the sponsor for indemnity, and the limit of liability; or to what extent that case is in principle specially incompatible with the fifth section of the act of 1851, (Id. § 4286,) which, as expressly making the ship liable for her navigation for her whole voyage, independent of the owner's control, might seem to include by implication towage under a tug's control for a small portion of a voyage, at the beginning or end of it, as the greater includes the less; or to what extent it is compatible with the principle or policy of any maritime law 'that an owner by any form of contract, whether of towage or otherwise, should be allowed to procure the navigation of his vessel to be effected without liability on her part for the injuries she inflicts on innocent third parties by her faulty navigation, or to substitute the liability of another man's tug of much inferior value for the liability of his own vessel for such damages, to the prejudice of others, thus abolishing, at his mere volition, *pro tanto*, the general law of maritime liens allowed .for the security of third persons; and leaving the discussion of these questions to a time when they are necessarily involved,—I apportion the damages between the Niagara and the tugs, and allow judgment for the Express against both the tugs and the Niagara, with costs.

NOTE.

The following is the opinion of BETTS, J., in the case of Sturgis v. Boyer, above referred to, (The Wisconsin and The Hector,) in the district court.

After reviewing the facts, and finding the libelant's lighter not in fault, the opinion proceeds, (volume 23, notes of BETTS, J., 127:)

"BETTS, J. The second inquiry demands a consideration of the proceedings by the ship and steam-boat, and whether they are chargeable with culpable acts of omission or commission of a character to render them jointly responsible to the libelant for the injuries sustained from them. In my opinion, the balance of testimony proves that the tow was approaching the lighter further out in the river from the New York piers than the lighter, she and the tow aiming to come to nearly at the same point. It was mid-day, and there was no impediment in the river to a clear view of the position and course of the lighter by those navigating the tow, and warning was given the tow from the lighter time enough to enable the tow to have stopped her way, or diverged from it sufficiently to secure the safety of the other vessel. The differing opinions of the witnesses as to the motion of the tide at the time of collision, and also as to the headway of the respective vessels, seem to be controlled by the fact that the barrels of flour thrown into the river by the upsetting of the lighter floated down the stream. Upon that condition of things, it is manifest that the exercise of reasonable diligence and caution on the part of the managers of the tow, when they ought to have been aware they could not prudently attempt to make her berth by going ahead of the lighter, throws upon the tow the responsibility for all damages inflicted upon the lighter by reason of continuing that movement. The injured party, in case of collision, has, as a general principle, a right to hold the vessel which is the direct and immediate cause of the wrong answerable to him for it, (The Neptune, 1 Dod. 467,) and this without .regard to the question of the personal participation of the owner of a colliding vessel in the culpable acts. When she is in motion in the pursuit of her lawful calling, she carries with her the responsibility of her owner for the acts of his agents, to whom she is intrusted, to the same extent as if she was under his personal direction. Abb. Shipp. pt. 3, c. 1. Nor does it matter whether the propulsion is by the agency of sails or sweeps, or that of steam-tugs fastened to her, and used to the same end, because the steam-power thus applied may be justly regarded only as a substitute for other physical means of navigation. Reeves v. The Constitution, 1 Gilp. 579; The Express, Olcott, 258. A ship under towage by a steamer lashed to her side is chargeable for damages wrongly occasioned another vessel by striking while under way against her. The Carolus, 2 Curt. 69. The answers filed, respectively, by the owner of the ship and the tug are in direct conflict upon the question whether the navigation of the tow was under the control of the officers of the one vessel or the other; it being averred for the ship that she was exclusively in the hands and under the command of the officers of the tug at the time of collision, and asserted on the part of the tug, with equal positiveness,

that she was placed under the exclusive orders and control of the ship, and was employed solely for the purpose of supplying the motive power for transporting the ship from one pier to the other, and the tug and her crew were therein subject to and obeyed the orders of the master and officers of the ship alone. It is unnecessary to speculate upon the consequences that would legally follow the establishment of that defense, because, in my opinion, the testimony does not show that either vessel was strictly passive in the course pursued in its navigation, but, on the contrary, the officers of both took active and efficient part in directing and controlling the movements of the tow. I am inclined to consider the primary responsibility rested upon the ship, she being the vessel actually colliding upon the lighter; but I also hold the tug was responsible for the direction given the ship, through the agency of her officers, concurring with those of the ship.

"This court decided in the case of The Express, Olcott, 258, that the tow, being separate from the tug, and coming in contact with another vessel by her own fault, was liable for the damages thus inflicted in a suit against her alone; and, although the decree was reversed on appeal upon a new state of facts proved in the circuit court fixing the fault wholly upon the tug, (1 Blatchf. 365,) yet that doctrine was explicitly adopted by Judge NELSON, who says: 'In all such cases, at least, there exists a common obligation by the tug and tow to make every reasonable effort to avoid the danger and a common responsibility in case of neglect.' In that case the appellate court corrected the decision below, because the liability was imposed by its judgment on the tow, when the culpable acts were committed by the tug solely, without any faulty concurrence on the part of the tow, upon the declared principle that both vessels were under a common obligation in their respective positions to employ every reasonable effort to avoid damage, and under a common responsibility for it in case of faulty omission to do so. 1 Blatchf. 367. The contingency anticipated in that decision arises in this case. The ship and the tug were united together, and were moved as one body. The ship's company had sole charge of her helm and sails, and the master of the tug gave directions from her deck concurrently for her navigation and that of the tug, and the helm of the ship was employed in a common navigation of the two vessels. Neither of the two, as they were connected and conducted, had any movement or action separate from the other, but employed concurrently the means at their command to a common end; and it cannot be said, therefore, for the ship, if the fact be of any moment in this case, that she did not participate with the tug in any voluntary action producing a collision. The admiralty court in Lower Canada (The John Counter, 18 Law Reports, L. C. 553,) held the steam-tug exclusively responsible for a collision of her tow with another vessel when the tow was hauling by a line clear of the tug, and the damage was caused by the sole fault of the tug, although she did not come in contact with the injured vessel. In The Carolus, 2 Curt. 69, Judge CURTIS adjudged the colliding ship, propelled by a tug, answerable for a collision caused by her, when the tug was not joined in the suit, without raising a question as to the liability of the ship.

"In the circuit court of Pennsylvania a distinction is taken which I do not meet with in any other adjudication between the responsibilities for collision when small steam-tugs are employed to tow large vessels, and large tugs are engaged in towing small craft, barges, etc. In the first class of cases, when injuries arose to other vessels by collision with a large tow through the misfeasance or culpable inattention of the tug, the consequences are made chargeable exclusively upon the ship, the tug being regarded as her servant or agent, acting under her authority; and that no suit for collision can be sustained against the tug for damages so accruing from collision by her tow. Smith v. The Creole, 2 Wall. Jr., 485, 511, 512. The Sampson, 3 Amer. Law Reg. 337. The entire navigation and movements of the two vessels is held to be at the risk of the ship. The principle of these rulings would apply to the present case, and would fasten on the ship the liability for damages inflicted upon the lighter. I am impressed with the persuasion that the true doctrine subjects both tug and tow to responsibility to another vessel for injuries inflicted upon it by the joint action of the two by means of their common fault. I am in no way convinced that the marine law dispenses either from liability to others for their mutual acts of misfeasance or omission upon navigable waters, as upon that area it is most important to the safe transportation of persons and property that every vessel propelling herself or another by motive powers within herself, or invoking or using such motive powers supplied by another, should be accountable for the consequences of the injurious misuse of such locomotion to the same extent as when she is acting separately and alone. It inures to the general security that the risk of that connection with such extraneous agency shall be imposed upon the parties so employing it, and that those suffering from its use should be entitled to indemnity therefrom against all the actors concerned in the wrong.

"A case decided in this court in June term, 1855, by Judge INGERSOLL, is cited as establishing a different ruling, and exonerating the tug, and imposing the loss upon the party in tow on her side, when a collision was caused in their movements. I have obtained a clearer statement of that case from the files of the court, and find that the question mooted in this case could not have appropriately arisen in that. The owners of a lake boat in tow along-side of the tug (the Catherine) was met and run against on the East river by another small boat or barge in tow along-side a tug, (the Birkback,)

and a collision ensued between the lake boat and the barge, and a joint action *in personam* was prosecuted by the libelants against the owners of the Birkback and of the tug Catherine, to recover the damages so incurred. The court dismissed the libel as to the tug Catherine, and awarded damages as against the owners of the Birkback. If the points involved in the present case were brought in discussion on the hearing or decision of that case, it could have been argumentatively only, and the decision necessarily would not affect the question in issue here. In my judgment, upon the facts and proof before the court, both the ship and tug were jointly actors in the tort committed upon the lighter, and the libelants are entitled to their recompense from the joint tort-feasors to the amount of loss so sustained."