## THE " CIVILTA " AND THE " RESTLESS."

A steam-tug making between seven and eight knots an hour was towing a ship by a hawser leading astern two hundred and seventy feet. The course which they were sailing crossed that of a schooner moving at the rate of from two to three knots an hour at a point just ahead of the tug, or between her and the ship. The schooner had a competent man at her wheel and a lookout, both of whom did their duty faithfully. Her lights were properly set and brightly burning, and she kept her course about northeast. There was a pilot upon the ship, to whose orders the tug was subject. He, however, gave none. The tug did not slow her engine until the schooner was up to her, nor stop it until the schooner was about to strike the hawser. The course of the tug and the ship had then been changed about a point to the south. The ship struck the schooner on her port side, at about the fore-rigging, and sunk her. *Held*, that the ship and the tug, being in contemplation of law but one vessel under steam, were bound to keep out of the way of the schooner, and are liable for the damages which she sustained.

2. The form of decree sanctioned in *The Alabama and the Gamecock* (92 U. S. 695) approved.

APPEALS from the Circuit Court of the United States for the Southern District of New York.

The facts are stated in the opinion of the court.

*Mr. William Allen Butler* for the " Civilta."

*Mr. Lucius E. Chittenden* for the " Restless."

*Mr. Robert D. Benedict, contra.*

MR. CHIEF JUSTICE WAITE delivered the opinion of the court.

This is a suit for damage by collision, begun by the owners and master of the schooner " Magellan " against the ship " Civilta " and the tug " Restless." The libel alleges that the schooner was heading about northeast, having her booms on her port side, and making about two and a half or three knots an hour, and that " the tug was towing the ship at the rate of about eight or nine knots an hour and headed for the schooner until she was very near to her, when she suddenly sheered to port across the bows of the schooner and just cleared her, but brought the ship down on the schooner."

The answers both of the tug and the ship state that the

course of the tug with the ship following in her wake was southwest and that of the schooner about northeast, which if kept would have carried her at a safe distance on the starboard side of the tug and ship; that the tug and ship kept steadily on their course, until the tug passed the schooner, when the schooner suddenly kept away to the right between the tug and the ship, ran on to the hawser, and was sunk. In this way was presented the principal issue of fact in the case.

The findings were substantially as follows: The tug was towing the ship from New Haven to New York by a hawser about two hundred and seventy feet long, leading astern from the tug. The ship had on board a pilot and the tug was subject to his orders. The night was clear and pleasant and lit by the moon. The wind was light and a little to the west of south. The ship and tug were going between seven and eight knots an hour. The collision occurred a little to the westward of Sand's Point.

The schooner was bound to Boston. She was sailing free with her booms off to port, and was making from two to three knots an hour. Her lights were properly set and burning brightly, as required by law. She had a competent man at her wheel and a competent lookout, and each of them faithfully performed his duty. Her course was about northeast, and it was not changed before the collision.

The ship and tug were seen by those on the schooner bearing a little on their port bow, and the schooner was seen by those on the ship and tug bearing a little on their starboard bow. The courses of the schooner and the ship and tug crossed each other just ahead of the tug or between the tug and the ship. The tug did not slow her engine until the schooner had got up to her, and did not stop till the schooner was just striking the hawser. The tug did not change her course until the schooner was up to her or nearly so, and the tug and ship had changed their course about a point to the south before the collision.

The ship struck the schooner on her port side at about the fore-rigging and sunk her. The lights of the schooner were not observed by those on board the tug or those on board the

ship, and those on board the tug and ship mistook the course of the schooner.   The pilot on the ship gave no orders to the tug.

Upon these facts the court below gave a decree against both the ship and tug and apportioned the damages, one-half to each, with a provision that if either of the vessels should prove insufficient to pay its share the residue might be collected from the other.

The ship and the tug have taken separate appeals.

It was substantially conceded in the argument that upon the findings the schooner is entitled to recover her damages either from the ship or the tug.   The effort of each of the respondents has been to throw on the other the entire responsibility for the loss.   On the part of the tug, however, it was contended that the findings do not meet the issues raised by the pleadings, but in this we think counsel are in error.   It is quite true the finding is that the courses the vessels were on crossed each other just ahead of the tug, or between the tug and the ship, when there is no express averment to that effect either in the libel or the answer, but the finding is certainly not inconsistent with anything that is alleged.   A southwest course would be parallel with a northeast course, and the two could not cross; but in the libel it is averred that the schooner was heading about northeast.   Such, also, is the statement in the answers, and the finding is the same.   A course which varied even a little from northeast might cross one that was southwest.   The libel charges the tug with suddenly sheering to port, while the tug and ship say the schooner suddenly kept away to the right. The finding is that the schooner did not change her course, and that the ship and tug only went off their course one point to the south.   Upon the findings the collision seems to have occurred because the original courses crossed each other with the vessels in dangerous proximity, and not because of a sudden change of course by the tug as alleged.   This we think sufficient.

Upon the findings as they stand we think the decree below was right.   The ship and the tug were in law one vessel, and that a vessel under steam.   It was their duty, therefore, to keep out of the way.   Whether the one vessel, which the two

constituted for the purposes of the case, was the ship, or the tug, or both, is the important question.

The tug furnished the motive power for herself and the ship. Both vessels were under the general orders of the pilot on the ship, but it is expressly found as a fact that the tug actually received no orders from him. Being on the ship, which was two hundred and seventy feet astern of the tug, it is not to be presumed that he was to do more than direct the general course to be taken by the ship in getting to her place of destination. The details of the immediate navigation of the tug, with reference to approaching vessels, must necessarily have been left to a great extent to those on board of her. She was where she would ordinarily see an object ahead before those on the ship could, and having all the motive power of the combined vessels under her own control, she was in a situation to act promptly and do what was required under the circumstances. That this was expected is clearly shown by the fact that down to the time of the collision the pilot on the ship had found no occasion to direct her movements. Her own pilot or master seems to have managed the navigation satisfactorily. We do not entertain a doubt that, situated as the tug was, in the night, so far away from the ship, it was her duty to do what was required by the law of a vessel under steam, to keep herself and the ship out of the way of an approaching vessel, particularly if the pilot of the ship did not assume actual control for the time being of the navigation of the two vessels.

Such being the case, we think it clear both vessels were in fault. Both mistook the course of the schooner, and neither those on the ship nor those on the tug observed the lights on the schooner, although they were properly set and burning brightly. It was for this reason undoubtedly that neither those on the ship nor those on the tug took any steps in time to avoid the collision. They evidently thought the course they were on would take them by in safety, until it was too late. Both vessels were responsible for the navigation, as has already been seen: the ship because her pilot was in general charge, and the tug because of the duty which rested on her to act upon her own responsibility in the situation in which she was placed. The tug was in fault because she did not on her own

motion change her course so as to keep both herself and the ship out of the way; and the ship because her pilot, who was in charge both of ship and tug, neglected to give the necessary directions to the tug, when he saw or ought to have seen that no precautions were taken by the tug to avoid the approaching danger. Had either the ship or the tug done its duty under the circumstances, there could have been no collision.

The decree is in the form sanctioned by this court in. *The Alabama and the Gamecock*, 92 U. S. 695.

*Decree affirmed.*