THE FANNIE TUTHILL.

*(District Court, N. D. Ohio, E. D.  1882.)*

1. TUG—DUTY OF—CONTROL OF NAVIGATION.
   In the towing of vessels without motive power the tug is to be regarded as the dominant mind or will of the adventure, and the details of immediate navigation, with reference to approaching vessels, must be left to a great extent to those on board of her.

2. SAME—MEASURE OF ACCOUNTABILITY.
   They are not regarded as common carriers, as to accountability, but are only required to use reasonable and ordinary care in their business—the skill and ability ordinarily possessed and exercised by those engaged in that business—towards the tows in their charge.

3. COLLISION—WITH VESSEL AT DOCK.
   Where a vessel was lying at a dock on the east side of the river, and a barge, in charge of a tug coming up the river, sheered to starboard, when the tug pulled her towards port to avoid another tug and tow coming down the river,

and directed the tow to steady her wheel, but the tow, by mistake, in porting her wheel sheered towards the barge fastened at the dock, when the tug tried to pull her towards the west side of the river, but failed, and the tow came into collision with the barge at the dock, *held*, that the master of the tug, in supposing he could pull the tow far enough to the west to avoid collision, was mistaken, and that he tried the expedient too long, and until the barge was so near that the accident of slipping of the tow line out of the chock of the tow, occasioned by hard pulling, precipitated the collision, which could have been avoided by allowing the tow to sheer and strike the dock below the vessel moored thereat.

In Admiralty.

*H. D. Goulder*, for libellants.

*Charles L. Fish*, for tug Tuthill.

*S. O. Griswold*, for barge Harvest.

WELKER, D. J. The barge Minnie Davis, owned by the libellants, was fastened to the dock on the east side of the Cuyahoga river, near the foot of St. Clair street, in the city of Cleveland, on the morning of the eighth of October, 1880. The tug Tuthill, towing the barge Harvest, came up the river and passed on the west side of the drawbridge at Main street, and some 400 or 500 feet above the bridge passed the tug Castle, having in tow two canal-boats going down the river on the port side of the Tuthill. Just before meeting the tug Castle with the canal-boats the Harvest sheered to the starboard, and the Tuthill pulled her towards port, and then passed the downgoing tug and tows. The Harvest was then directed to steady her wheel, but soon she sheered towards the port side in the direction of the Minnie Davis. The helm of the Harvest, by mistake, was put hard a-port, which sent her to the port side of the river, when it should have been put starboard to avoid the port side of the river. The tug tried to pull her into the river towards the west side, but failed to do it, and the Harvest ran into the stern of the Minnie Davis, doing her great damage. When the Harvest sheered to the port side she was some 400 or 500 feet from the Davis, and two-thirds across the river at that point.

There is no doubt but that the Harvest was careless and at fault in the manner in which her helm was placed. It had been placed exactly wrong, and thereby contributed to the injury of the Davis.

The question about which there is some doubt is whether the tug was also at fault in the manner in which she tried to prevent the collision. It would seem curious that in broad daylight in the river the tug and tow could not avoid hitting the Davis, lying fastened to the dock in full sight as she was.

In the towing of vessels without motive power the tug is to be regarded as the dominant mind or will in the adventure. It is the duty of the tow to follow her guidance, to keep as far as possible in her wake, and to conform to her directions. The exercise of reasonable skill and care within this sphere is incumbent on the tow. 94 U. S. 496.

The details of the immediate navigation of the tug, with reference to approaching vessels, must necessarily be left, to a great extent, to those on board of her. 103 U. S. 702.

In the discharge of the duty of towing vessels tugs are not to be regarded as common carriers and held to accountability as such. They are only required to use reasonable and ordinary care in their business—the skill and ability ordinarily possessed and exercised by those engaged in that business towards the tows in their charge.

In this case the Minnie Davis, lying at the dock, powerless, as she was, it was the duty of the tug, as well as the barge, to use all reasonable care to avoid an injury to her. It is claimed that the tug did all she could to prevent the collision. The evidence warrants the conclusion that she did not. It is evident that the master of the tug supposed he could pull the Harvest far enough from the port side of the river to avoid the collision. In this he was mistaken. He tried the expedient too long, until the barge got so near that the accident of the slipping of the tow-line out of the chock of the Harvest, occasioned by hard pulling, immediately precipitated the Harvest into the Davis. When the Harvest first sheered to the port side the evidence shows that the tug was some 400 or 500 feet from the Davis. It was its duty, then, if it was seen that the helm of the Harvest was wrong, to have it corrected, or use all means to stop the barge and avoid the collision in case it was not immediately corrected. This it did not do. The collision could have been avoided if the tug had allowed the Harvest to sheer over to the port side, as her rudder would have sent her, and thus struck the dock below the Davis. The tug was also at fault in increasing the speed of the barge by her hard pulling as it passed the down-going tug, and her continued pulling against the rudder of the Harvest. This, no doubt, aided the collision of the vessels.

Decree for libellants against both defendants, and referred to Earl Bill, commissioner, to report damages.