## THE CONOHO.

*(District Court, E. D. Virginia.   March 10, 1885.)*

1. COLLISION—COASTING STEAMER—LIGHTS.
    A coasting steamer not rigged for sails, which navigates narrow channels, is in fault in not carrying the central range of two white lights required by the rules, and in showing instead a single white masthead light.   In narrow channels and rivers this range of lights is essential in order to indicate her course accurately to approaching vessels.

2. SAME—BURDEN OF PROOF.
    When the question arises, the burden of proof is on the vessel whose lights are attacked to show by clear proof that her lights were properly placed and burning at and just before the collision.

3. SAME—FAULT.
    An approaching vessel which sees only a white light on the other vessel, and regulates her movements on the assumption that such vessel is at anchor, is not in fault in case of collision, but the other vessel is solely liable.

In Admiralty.   Libel for collision.

*Sharp & Hughes,* for libelant.

*Starke & Martin* and *White & Garnett,* for respondent.

HUGHES, J.   The collision which is the subject of this libel happened at half past 11 o'clock, on the night of August 30, 1884, in the southern part of Currituck sound.   The government of the United States has excavated a canal 80 feet wide, and 9 or 10 feet deep, through the sound and in North Landing river; the former navigation and natural depth of water having been only from six to six and a half feet.   On each side of the artificial canal the water of the sound spreads out with its original depth.   The government has placed gas beacons along this canal to mark each change in its course, the general course being about S. by E.   This collision happened at about three-quarters of a mile north of beacon light No. 7, at a point two miles north of Long Point light.   The water of the sound east of the canal or cut at the place of the collision, is six to six and a half feet deep.   The collision occurred between the steamer Fairchilds, going south, and the steamer Conoho, going north; the Fairchilds drawing five and a half, the Conoho seven, feet.   The Fairchilds was sunk and her cargo damaged; and this libel is brought by the owner of the Fairchilds and by her master, for the damages sustained by vessel and cargo.

The evidence of the libelants presents the following case:   The Fairchilds had met and passed the tug Belle Virginia, in tow of a raft, about three miles north of beacon 7, and some distance north of beacon 6.   She had up all her regulation lights; namely, her green and red side lights, her aft white light high up above decks, and her lower forward white light.   She passed the tug port to port.   The Fairchilds held her course in the cut until after passing beacon 6, and saw a white light ahead of her, nearly in range with beacon 7. She took this to be the light of a vessel at anchor.   The night was

dark; there was a strong wind from the west; a squall had prevailed, but was subsiding. Concluding that the light ahead was an anchor light, the master of the Fairchilds resolved to pass to the eastward around the stern of the vessel supposed to be at anchor, there being danger of fouling his propeller in passing over the anchor and chain of a vessel at anchor, and the water east of the cut being about six and one-half feet deep. He first slowed down and starboarded his helm. While in the act of running this course, making for the east of the cut, he discovered that the vessel which he had supposed to be at anchor was moving towards him, and was within a hundred yards of him. He immediately blew four whistles and backed his engine, and had barely checked the headway of the Fairchilds when she was run into by the other vessel, abreast of the forward hatchway, and so damaged that she sank in a few minutes, on the east side of the cut, in six and one-half feet of water. The other vessel proved to be the steamer Conoho. Capt. McHorney, master of the Fairchilds, and all the crew of this steamer, testify that they saw no other light on the Conoho except a white light, high up and forward of midships. The proof of the crew of the Conoho is that this light was 42 feet above the deck. Capt. Spidden, master of the tug Belle Virginia, testifies that after the Fairchilds had passed him he saw the white light of the Conoho, and took it to be that of a vessel at anchor; that he saw no other light; and that if her side lights had been burning he could and would have seen them. The bridge-tender at Coinjock, five miles south of the place of collision, and a man who lived at the bridge, testified that when the Conoho passed them she had up only one white light. They were examined apart, and though subjected to a rigid cross-examination, these two witnesses corroborated each other in their statements.

The seventh rule of navigation, prescribed by act of congress as to signal lights for steamers under way, requires that "coasting steamers and those navigating bays, lakes, or inland waters," etc., "other than the Mississippi and its tributaries, shall carry red and green side lights, as prescribed for ocean steamers, *and a central range of two white lights*, the after light being carried at an elevation of at least fifteen feet above the light at the head of the vessel, the head-light to show through 20 points of the compass," etc., "and the after light to show all around the horizon." Rule second provides that the lights prescribed, "and *no others*, shall be carried in all weathers between sunset and sunrise." The board of supervising inspectors, in the rules and regulations prescribed for lakes, bays, sounds, rivers, and the seaboard, as authorized by acts of congress of 1871, 1875, 1881, and 1882, require as follows, (see rules and regulations, approved March 5, 1884, p. 47:) "If at anchor, all vessels, without distinction, must exhibit a bright white light at least twenty feet above the surface of the water."

The strict observance of these rules is necessary to the safety of

navigation. By their observance the navigation of steamers at night' is rendered as safe as it is by day. The rule for inland waters and narrow channels differs in one respect from that for open waters. It not only requires the two colored side lights, but it requires the two white range lights, to be up and burning. The red and white side lights only show in what *general direction* the steamer is going; they do not show with accuracy *the course* held by the steamer moving in that general direction. In narrow waters it is necessary to safety that this *course* shall be known; and the high light aft, and the lower light forward, fixed on a range with the center of the vessel, as required by rule 7, shows this *course*.

These two sorts of lights are probably more important in narrow channels than the red and white lights. They are both essential. It is for this reason that every steamer navigating narrow waters at night is required to have these lights up. If a steamer has them not it is in fault; it is grossly in fault. It takes the risk and responsibility of whatever may happen when they are not up. The burden of proof is upon the steamer to show that they were up. The proof must be positive. It must not be a matter of inference. These lights must be shown to have been up at the time of the collision, and long enough during the moments just previously to have permitted the approaching vessel to make the maneuvers proper for avoiding a collision. There can be no safe navigation of our inland waters by steamers at night unless the master of each steamer *knows* that these lights are up at every moment while he is in motion. What I said in the case of *The Oliver*, 22 FED. REP. 848, I repeat with emphasis and enlargement: the law as to lights is imperative. It must be obeyed. It must be effectively obeyed. Obedience to the requirements of the law must be certain and *unremitted*. The master, or officer in charge, must *know* that the lights are continually up. Conjecture will not do. If he does not look to it himself he must have a lookout on deck, not only to keep the lights constantly burning, but to be able to say positively, in the event of a collision, that they were up before and at the time of it. The courts must not be driven to the necessity of fishing for the truth in the uncertain and conflicting testimony of the seamen of rival crews.

The case under consideration turns chiefly upon this question of the lights of the Conoho. It is not pretended that this steamer had a white light aft, showing all around the horizon, nor a head-light forward, at least 15 feet lower. Without these range lights, the Fairchilds would not know the Conoho's course. It is not proved, even by the Conoho's own witnesses, that she had a red light burning just before the collision. These witnesses leave that important matter to conjecture. All the Conoho's own witnesses agree that the red light was out immediately after the collision. None of them could prove that it was burning immediately before. The existence of this light was essential to authorize the Fairchilds to pass to port down the

west bank of the cut. Unless it was burning, the Fairchilds had no right thus to pass to port. The green light of the Conoho, being on the opposite side of that on which the Fairchilds would have passed if she had known the Conoho was moving, could not probably have been seen if lighted; and therefore, whether it was burning or not, is not an essential question in the case. Still, no witness of the Conoho testified that it was burning immediately before the collision. All that they could say, and all that the crew do say, is that it was burning just after the collision. I know not how to reconcile the testimony of all the witnesses of the libelants, who say that they did not see the green light of the Conoho, (some of them insisting positively that it was not burning,) with the testimony of all the crew of the Conoho, that it was burning just after the collision, except in one way.

The duty of attending to the lights, and putting them in place after sunset, belonged to one of the colored wheelsmen, Tobe Jones. At the time of the collision this man was lying awake in his berth below, waiting to go upon his watch at 12 o'clock. As the Conoho crashed into the Fairchilds, Jones heard the master of the latter sing out angrily, "What are you doing with your lights out?" He says he ran up on deck, and the green light on the starboard deck was burning. He says he then looked on the port side, and that light was out. He adds that he took that light out of the box, and it was warm. Here was a man whose place depended on showing that those lights were up. It was natural for him to run up and light the green light as soon as possible. It was natural for him, finding that everybody else had discovered that the red light was out before he could light it, to insist that the lamp was the next thing to being lighted; that it was *warm*. The theory that this interested man ran up promptly and lit the green light reconciles all the essential testimony in this case; and it is much more rational to assume that this one interested witness told a falsehood, than that all the rest of the crew of the Conoho, or else all of the witnesses of the libelant, including so intelligent and disinterested a witness as Capt. Spedden, of the Belle Virginia, told a falsehood. It is unquestionable that the Conoho had up neither of the white range lights required by the rules of navigation; and that she was in fault as to both of them. The weight of evidence establishes, also, that her side lights were not burning just before the collision. The burden of proof is upon her to show that they were burning, and she does not show it affirmatively by any conclusive or reliable testimony. She herself proves that her lookout came from off the deck into the pilot house soon after passing Long Point light, which was two miles (or nearly half an hour) from the place of collision. Just before that accident she did not have a lookout on deck, either to keep his eyes on the lights or for any purpose. She was, in these respects, at fault, not only in her duty, but in her proofs.

Though the Conoho was thus in fault, however, the Fairchilds would not have a right to recover, if, after she had discovered the real position of the Conoho, she committed a fault that produced the collision. She certainly did not commit a fault in not trying to leave the Conoho to port, and passing down the west side of the cut. She could not safely do this. She had no right to do this so long as the Conoho showed no red light. Seeing no red light, and being in motion, she was under the necessity of acting in accordance with the signal light or lights shown by the Conoho. The master of the Fairchilds insists, with apparent truth, that the Conoho showed no lights to indicate that she was in motion; and, on the contrary, showed a light which could indicate nothing else but that she was at anchor. His own movements were responsive to that signal. They were proper for the occasion. The Fairchilds, acting upon the direction of the signal held out to her, the wind being from the west, was right in declining to leave the anchor light to port, lest she should foul her propeller in the anchor chain, and also did right in slowing her speed, and starboarding her helm, to pass to the eastward around the stern of the vessel supposed to be at anchor. And when all of a sudden she discovered that the vessel moving under anchor light was a steamer in motion, within 100 yards of her, she could do nothing else but blow four whistles, stop, and back her engine. She was not at fault in this. She obeyed rule 21 of navigation, which requires steamers when in danger of collision to "stop and reverse."

If, as the testimony of libelant indicates, the steamers were a hundred yards from each other when the Fairchilds, in moving eastward, showed her green light to the Conoho, then the Conoho committed a fault on seeing that green light. All her witnesses that spoke on the subject testify that, on seeing the green light and blowing one whistle, the Conoho hard-ported her helm. The Fairchilds was going at less than seven miles an hour, and the Conoho at five miles. They were nearing each other at the rate of 200 to 250 yards a minute, and the Conoho had half a minute in which to sheer off, leaving the Fairchilds to starboard. Instead of that she hard-ported her helm, and drove right into the Fairchilds at right angles. If, when she blew her one whistle she had instead blown two whistles, and hard-starboarded her helm, she might have cleared the Fairchilds, if the two vessels were then 100 yards apart.

But it is impossible to know with certainty whether this distance was 15 or 100 yards. The witnesses of the Conoho say that it was only 15 to 20 yards. It is uncertain, therefore, whether the Conoho did make the collision inevitable by hard-porting her helm and sounding one whistle, or not. No conclusion, therefore, can be formed on this subject.

The cause of the collision was the false signal held out by the Conoho, in having up to the inspection of the Fairchilds no range white lights, no red light, probably no green light, and in having up only

what the Fairchilds had a right to conclude was an anchor light. The regulation forbids the anchor light to be less than 20 feet above the water. It does not forbid its being 42 feet above deck.

In the interest of the navigation of our inland waters, I should not dare to exonerate the Conoho from blame on the evidence in this case. I will refer to the master the question of damages; and on the coming of his report will assess these, and decree for the libelant.

There was no appeal from this decision.