## In re WALSH et al.

(Circuit Court of Appeals, Fifth Circuit. March 28, 1905.)

### No. 1,420.

COLLISION—LIABILITY OF TUG FOR COLLISION WITH TOW FLEET UNDER DIRECTION OF PILOT OF TOW.

A tug employed solely to furnish motive power to another vessel, to whose side she is lashed, and which is in all things with respect to the navigation of the fleet subject to the orders of a pilot employed by and on board of the tow, is not liable for a collision occurring without her own fault, although it may have been caused or contributed to by the fault of the pilot or of the tow.

Appeal from the District Court of the United States for the Southern District of Alabama.

Harry T. Smith, Gregory L. Smith, and W. S. Benedict, for appellants.

H. Pillans, for appellees.

Before PARDEE, McCORMICK, and SHELBY, Circuit Judges.

PARDEE, Circuit Judge. The steamboat Alma, while descending the Mississippi river on the night of November 22, 1901, at a point opposite the Stuyvesant Docks of the city of New Orleans, collided with a fleet composed of the James G. Pendleton, a three-masted, schooner-rigged vessel, known as a tank or oil barge, in tow of the steam tug Echo, which was lashed alongside on her starboard quarter, and with a barge, the Texas No. 1, astern and in tow of the Pendleton with a 20-fathom hawser. The Pendleton was a vessel of about 800 tons burden, and carried a master, mate, and crew. She stood high out of the water, although carrying a full cargo of oil. The actual collision was between the port bow of the Pendleton and the Alma, and the effect was to crush a hole in the starboard side of the Alma, so that, soon after being towed to the other side of the river, she sank and became a total loss. Henry W. Gribble was a clerk on board of the Alma, and was thrown down and injured by the concussion. The owners of the Echo filed their petition for a limitation of their liability, and the Red River Line, as the owner of the Alma, and Henry W. Gribble in his own right, filed their respective petitions setting forth the liability on the part of the Echo on account of the collision. The District Judge dismissed both these petitions, holding that the Echo was without

fault in the collision, and that the Alma was in fault in several par-
ticulars. In his opinion, printed in the transcript, the judge says:

"The first question raised on the evidence and argument is whether the
Echo is, under the circumstances of the case, responsible for the faults or acts
of omission of the pilot on the tow, or of the crew of the tow, even if such
faults or acts appear to have caused the collision. My opinion is that, in re-
spect to a compliance with the general navigation laws, the tug Echo, so far
as her own lights and signals are concerned, would be liable for her own
faults or acts of omission, but that, so far as the faults or negligent acts of
the pilot or crew of the barge Pendleton are concerned, as regards their own
vessel, the latter was a separate and independent vessel, and would be solely
liable. That is to say, if the collision was caused by the failure of the Echo
to carry and display proper lights or to make the proper signals, as required
by the rules, it would be liable. If the collision was caused by the failure of
the Pendleton to carry and display the proper light, the tug Echo would not
be liable therefor; or if the collision was caused by the tug and tow not being
in their proper place ascending the river, according to the custom, the tug
would not be responsible. The barge Pendleton had her master and crew in
charge of her, and a special river pilot aboard, employed by her owners to
control and navigate the fleet, which consisted of the tug and two barges in
tow. The tug was bound to obey the orders of the pilot, at least so far as
they did not conflict with the navigation rules. This certainly was true as
relating to the fleet's proper place in the river; and I think the tug's non-
liability as regards the lighting of the barge equally clear. Spencer on Marine
Collisions, § 123; Hughes on Adm. p. 119; Sturgis v. Boyer, 24 How. 110, 16
L. Ed. 591.

"Under the authorities, I have some doubt that I am correct in the opinion
that the tug would be liable for the failure to give proper signals irrespective
of the tow pilot's orders, in view of the circumstances of this case. However,
from my view of the case, this is immaterial.

"There is a great volume of testimony in the case, and, as is usual in cases
of collision, much conflict of evidence on important questions involved in it."

The judge then proceeds at length to analyze and consider the
evidence with regard to the lights and the respective navigation of
the Alma and the fleet, and, in regard to the liability of the Echo,
concludes:

"I think that the evidence is absolutely conclusive as to the fact that the
Echo and tow were on the New Orleans side of the river—their proper place
in the river according to the customary course of its navigation. The burden
is on the libelants to establish their case. Donald v. Guy (D. C.) 127 Fed. 228,
and authorities therein cited. It is incumbent upon them to point out some
negligence or infraction of duty on the part of the tug Echo that contributed to
the collision. They have done so in their libel, but have failed to sustain its
allegations by the evidence."

The evidence in the case clearly establishes that the Echo was
properly lighted and was without fault in the premises, unless she
and her master were responsible for the faulty navigation of the
fleet. It is undisputed in the evidence that before and at the time
of the collision the fleet was under the charge of a regular Mis-
sissippi river pilot employed by the owners of the Pendleton, and
that said pilot, from his position on the cabin of the Pendleton,
commanded and directed the navigation of the whole fleet. The
pilot testifies that he was employed by the owners of the Pendleton
to pilot the fleet up the river; that he went on board the Pendleton
and took charge, issuing orders to the helmsman of the Pendleton,
and to the captain of the Echo as to the entire navigation of the
Echo. It it is also undisputed in the evidence that the Echo, while

furnishing the propelling power moving the whole fleet, in regard to navigation followed in all things exactly and implicitly the orders given by the Pendleton through the pilot in charge. Corroborated by the pilot and undisputed in.the evidence, the captain of the Echo testifies that he received from the pilot and obeyed all orders issued as to. navigation, and, further than such obedience to orders, took no part in the navigation of the fleet. And there is no evidence entitled to credit to the contrary.

As the Echo was not responsible for the proper navigation of the fleet, and in all respects complied with the laws and regulations applicable to her handling and management in the premises, and in no way by her fault contributed to the collision, she ought not to be held responsible for faults, if there were any, in the navigation of the Pendleton. In Sturgis v. Boyer, 24 How. 110–121, 16 L. Ed. 591, after full argument, the Supreme Court said:

"Cases arise, undoubtedly, when both the tow and the tug are jointly liable for the consequences of a collision; as when those in charge of the respective vessels jointly participate in their control and management, and the master or crew of both vessels are either deficient in skill, omit to take due care, or are guilty of negligence in their navigation. Other cases may well be imagined when the tow alone would be responsible; as when the tug is employed by the master or owners of the tow as the mere motive power to propel their vessels from one point to another, and both vessels are exclusively under the control, direction, and management, of the master and crew of the tow. Fault in that state of the case cannot be imputed to the tug, provided she was properly equipped and seaworthy for the business in which she was engaged; and if she was the property of third persons, her owners cannot be held responsible for the want of skill, negligence, or mismanagement of the master and crew of the other vessel, for the reason that they are not the agents of the owners of the tug, and her owners in the case supposed do not sustain towards those intrusted with the navigation of the vessel the relation of the principal."

Sturgis v. Boyer has been cited approvingly and followed in many cases in the admiralty courts. See Winslow's Digest, vol. 3, p. 4837. The same principles for determining the responsibility as between tug and tow are found in the text-books (Spencer on Collisions, § 124; Parsons on Shipping and Admiralty, vol. 1, p. 534; Hughes' Admiralty, 119), and have been recognized and followed generally in the admiralty courts. See The Connecticut, 103 U. S. 710–712, 26 L. Ed. 426; The Civilta and Restless, 103 U. S. 699, 26 L. Ed. 599; The Virginia Ehrman, 97 U. S. 313, 24 L. Ed. 890; The Imperial (D. C.) 38 Fed. 614, 3 L. R. A. 234; Westhoff v. Oluf, 3 Woods, 667, Fed. Cas. No. 17,449. The opinion in The Edgar Baxter, 8 Ben. 162, Fed. Cas. No. 4,278, by a distinguished admiralty judge, afterwards an ornament to the Supreme Court of the United States, is so clear and pointed, and so applicable here, that we quote in full:

"Blatchford, District Judge. The evidence shows that the movements of the propeller were under the direction of a pilot who was on board of, and belonged to, and was in the employ of, the schooner. The tug furnished only the motive power, while the guidance of the two vessels, considered as one in their relations to other vessels, the schooner being lashed alongside of the tug, was under the direction of the schooner, through such pilot. Under those circumstances the tug is not liable for the damage complained of in this case, and the libel must be dismissed, with costs."

On principle, and after full consideration of the subject in the light of the text-books and adjudged cases, we concur with Parsons, supra:

"The question has arisen, when a vessel is in tow of a steam tug, and collision occurs with another vessel, which is responsible, the steam tug or the vessel in tow? It is obvious that two perfectly distinct views may be taken of the relation between them. According to one, the vessel towing is but the servant of that which is towed; this latter is the master, and is responsible for the acts of the former as his servant. According to the other, the vessel towed is for the time under the absolute control of the vessel towing, and this latter is therefore responsible for any mischief done. We apprehend it to be an error to assume that either of these relations must exist in any particular case. The inquiry should always be, which party is the principal, and which the servant? And, wherever the relation of principal and agent exists, the case should be decided on the principles of agency. Generally, we should say that the tug was probably the servant, and the vessel which employed her the principal, and responsible as such. But it will be seen that the cases are in irreconcilable conflict."

In this case, we think the Echo was the servant, and without fault, and the Pendleton was the principal, and responsible as such.

For the reasons given, it is clear that the decree of the District Court should be affirmed, irrespective of faults of navigation which may have been committed by the fleet and the pilot in charge thereof, and therefore it is unnecessary to lengthen this opinion by reviewing the evidence as to the lights and signals and steering of the Pendleton and Alma.

Affirmed.