## THE DEGAMA.

### JAMES GIBBONEY & CO. v. BRIDGES.

(Circuit Court of Appeals, Fifth Circuit. January 29, 1907.)

### No. 1,527.

COLLISION—MOVING AND MOORED VESSEL—PRESUMPTION OF FAULT IN MOVING VESSEL.

A moving vessel which comes into collision with a vessel moored is presumptively in fault, and she cannot be exonerated from liability on the ground that she was at the time being handled by tugs which controlled her movements unless such defense is pleaded and proved.

[Ed. Note.—For cases in point, see Cent. Dig. vol. 10, Collision, § 103.]

Appeal from the District Court of the United States for the Southern District of Alabama.

For opinion below, see 140 Fed. 755.

Harry Pillans, for appellant.

Gregory L. Smith and H. T. Smith, for appellee.

Before PARDEE, McCORMICK, and SHELBY, Circuit Judges.

PARDEE, Circuit Judge. This is a collision case in admiralty. The libel charges in respect to the collision:

"That the vessel is now lying in the River Mobile within said Southern district of Alabama, and within the admiralty and maritime jurisdiction of this honorable court. That on or about the 12th day of May, 1905, the coal barge Mayfield and the hoisting coal barge Pratt, both of which are owned by libelants, were lying fast to the end or head of the wharf known as the 'Southern Railroad Company's Coal Wharf'; the Pratt occupying the quay berth and the Mayfield being outside of her. That in the forenoon of said day the said steamship Degama, while proceeding to a dock or being docked near to where these barges were lying, was so negligently and recklessly handled and operated that she came into contact and collision with the barge Mayfield, striking her on the starboard side a few feet forward of the stern, and drove her with violence against the hoisting barge Pratt, staving in the planking and timbers of the barge Pratt and doing other damage to them, as is hereinafter set forth."

The claimant answers thereto as follows:

"He does not know whether on the 12th day of May, 1905, the barges Mayfield and Pratt were owned by libelant or not. They were lying fast to the end of the wharf known as the 'Southern Railroad Company's Coal Wharf.' The Pratt was occupying the quay berth and the Mayfield was lying outside of her. He admits that the steamship Degama, while proceeding to the dock adjoining the wharf at which the barges were lying, came in contact with the barge Pratt and somewhat injured her. He denies that this was due to negligence on the part of the Degama."

On the trial libelants offered the evidence of several eyewitnesses of the collision and also evidence as to damage and attempts to settle the same. The claimant offered no evidence whatever. The libelants' witnesses testified, when describing the collision, among other things, as follows: Witness Austin says, "As to whether the steamer was warping in with lines or coming in under steam, the tugboats had her." And on cross-examination said, "Yes, sir; I said she was being

handled by a tug. ⊥ don't remember the name of the tug." William Tiegen said, "No, sir; the Degama was not under her own steam. They turned her in. She headed in towards the wharf and struck the Mayfield near the stern." Oscar Thiel said:

"The tug Nimrod tried to pull her down to the south slip. They pulled her away from us before she struck, and the tug saw they couldn't hold her any more. I said that the Nimrod was handling her. The Nimrod was on her starboard side at first—found she couldn't hold her and let her go. She had a head rope—we were alongside. She was trying to pull in from upstream. She tried to pull off from me, but the ship had too much wind and headway and hit us. I think the Degama was under steam. She was using her propeller backwards; her propeller was backing."

On this evidence given by the libelants' witnesses with regard to the presence and movements of the tug in connection with the collision, the district judge dismissed the libel on the ground that the ship was under the control and domination of the tug, and therefore not liable for the collision—citing The Clarita, 23 Wall. 1, 23 L. Ed. 146; The St. Johns (D. C.) 101 Fed. 470; Sturgis v. Boyer, 24 How. 110, 16 L. Ed. 591. Also the case of The Civilta and The Restless, 103 U. S. 699, 26 L. Ed. 599.

It is to be noted that the claimant neither pleaded nor offered evidence to prove that the Degama in moving or being moved from one station to another in the harbor was under contract with and control of a tug; and the only evidence on the subject is that found in the examination of the libelants' witnesses who refer to the presence and some of the movements of a tug. When a vessel in motion runs into a vessel moored, the rule is that the moving vessel must exonerate herself from blame. The Virginia Ehrman and The Agnes, 97 U. S. 309–315, 24 L. Ed. 890, and cases there cited. In such a case there is a presumption of fault on the part of the moving ship, and the burden of proof is on her to exonerate herself from liability. The Oregon, 158 U. S. 186, 15 Sup. Ct. 804, 39 L. Ed. 943; The Granite State, 3 Wall. 310, 314, 18 L. Ed. 179; Inland & Seaboard Coasting Co. v. Tolson, 139 U. S. 551, 554, 11 Sup. Ct. 653, 35 L. Ed. 270; Pennsylvania R. Co. v. Ropner (C. C.) 105 Fed. 397; The Bridgeport, 14 Wall. 116, 20 L. Ed. 787.

If, as held below, the Degama was under the domination and control of a tug, and therefore not responsible for her own navigation, it was incumbent upon the claimant to not only allege, but to prove, the same. This is not at all in conflict with the authorities cited by the judge below, which are all cases in which the contract with and control of the tug was sufficiently proved. It was within the province of the claimant to have furnished evidence with regard to the contract with the tug and the irresponsibility of the ship. From the failure to do this in the present case every implication is against the ship. Clifton v. United States, 4 How. 242, 11 L. Ed. 957; The New York, 175 U. S. 187, 20 Sup. Ct. 67, 44 L. Ed. 126. On the evidence actually submitted, we cannot agree with the conclusion of the district judge as to the irresponsibility of the ship on account of her being in tow of, or being handled by a tug. In moving large steamers around in ports, tugs are frequently employed to aid in the movement without any control of

the navigation or responsibility therefor. In this case the capacity of the tug, the contract of employment in and about the moving of the ship, and whether the tug in fact or under contract controlled the navigation of the ship is left to conjecture, with the presumption of fault against the ship. In Re Walsh and The Echo, 136 Fed. 557–559, 69 C. C. A. 267, the matter of the responsibility of a ship in tow of a tug was fully discussed, and there the nonliability of the tug was held only upon satisfactory evidence that the ship, although in tow of the tug, in fact controlled the navigation.

The decree of the court below is reversed, and the cause is remanded to enter a decree for the libelants for such damages as may be shown under the usual practice in such cases.