### THE EUGENE F. MORAN.

### THE CHARLES E. MATTHEWS.

### SCOWS 15 D AND 18 D.

Circuit Court of Appeals, Second Circuit.    May 25, 1909.)

Nos. 282, 283.

COLLISION (§ 75*)—TOW—CONTRIBUTORY FAULT OF TOW—FAILURE TO CARRY PROPER LIGHTS.

Under rule 11 of the supervising inspectors of steam vessels, adopted pursuant to section 2 of the inland rules (Act June 7, 1897, c. 4, 30 Stat. 102 [U. S. Comp. St. 1901, p. 2884]), the lights thereby required to be carried by a scow in tow are not solely to prevent collision with herself, but also to assist in indicating to approaching vessels the number and length of the tow and positions of the vessels; and she may be charged with contributory fault for a collision with another vessel of the tow because of her failure to comply with such rules.

[Ed. Note.—For other cases, see Collision, Dec. Dig. § 75.*]

Appeals from the District Court of the United States for the Southern District of New York.

See, also, 154 Fed. 41, 83 C. C. A. 153; 212 U. S. 466, 29 Sup. Ct. 339, 53 L. Ed. ——.

James E. Carpenter, for the scows.
W. S. Montgomery, for the Charles E. Matthews.
Archibald Thatcher, for New York C. & H. R. R. Co.

Before LACOMBE, COXE, and NOYES, Circuit Judges.

PER CURIAM. These causes came here upon appeals from decrees of the District Court, Southern District of New York, holding

the tugs Moran and Matthews and the scows 15 D and 18 D all in fault for a collision between 15 D and a car float belonging to the New York Central & Hudson River Railroad Company. Both colliding vessels sustained damages. This court affirmed the conclusions of the District Court as to faults of navigation and responsibility therefor. 154 Fed. 41, 83 C. C. A. 153. A question was presented as to the assessment of damages between the different vessels, which will be found stated and the authorities bearing upon it cited in our former opinion. We decided to certify that single question to the Supreme Court, stating that when it might be answered this court would dispose of the decrees appealed from. Such question was therefore so certified, as follows:

"In what proportions shall the damages sustained by the libelants be assessed upon the offending vessels?"

A mandate has now been received from the Supreme Court, declaring that it is the opinion of that court that such damages should be assessed equally upon the offending vessels. The opinion of the Supreme Court was filed February 23, 1909, reported in 212 U. S. 466, 29 Sup. Ct. 339, 53 L. Ed. ——.

Our attention has been called by counsel for the scow 18 D to a passage in that opinion, and we are asked to reconsider our former decision as to the liability of that vessel. The passage reads as follows:

"The only fault on the part of the 18 D. that is set out in the statement. is the absence of a light, and it is said that 'therefore' it was party to a common fault. We doubt whether the conclusion follows from the premises. When a duty is imposed for the purpose of preventing a certain consequence. a breach of it that does not lead to that consequence does not make a defendant liable for the tort of a third person, merely because the observance of the duty might have prevented the tort. See Gorris v. Scott, L. R. 9 Ex. 125: Ward v. Hobbs, 4 App. Cas. 13, 33. The question arises, therefore, whether the duty to give warning by a light was imposed upon 18 D for any other purpose than to prevent collision with itself. If not, then, as the boats are dealt with as individuals, and not as parts of a single whole, we do not see how the absence of a light on 18 D can be said to have contributed to the loss. * * * A duty of wider scope has been thought to exist in a somewhat different case. The Lyndhurst (D. C.) 92 Fed. 681, 682."

Act June 7, 1897, c. 4, § 2, 30 Stat. 102 (U. S. Comp. St. 1901, p. 2884), being the inland rules of 1897, provides that the supervising inspectors of steam vessels and the supervising inspector general shall establish such rules to be observed as to the lights to be carried by ferry boats and by barges and canal boats when in tow of steam vessels as they from time to time may deem necessary for safety. The rule adopted by them and in force at the time was rule 11, which, among other things, provides that:

"All scows without rudders or other means of guidance, being towed by hawser behind steam vessels on any navigable waters of the United States, shall carry a regulation white light at each end of each scow (such lights to be carried not less than 6 feet above the deck) as shown in diagram No. 4, department circular No. 27, dated February 13, 1894."

The same rule also provides in great detail for barges or canal boats when towed tandem and when towed in tiers, prescribing the locations

170 F.—59

and character of the lights to be carried by them. These regulations of the inspectors, taken in connection with the statutory regulations for steam vessels when towing, undertake to provide a scheme of illumination which may enable vessels approaching a towed flotilla to make out, with some measure of accuracy, not only the course of the tug and tow, but also the tow's make-up (whether tandem or in tiers), and its length. We find nothing in the language of the rule nor in the context to indicate that it was the intention to provide for the carrying of lights by a scow thus towed solely to prevent collision with herself. Apparently this rule, like all other regulations for carrying lights, was devised for the purpose of conveying information as to the scow's whereabouts, so as to enable all vessels navigating in her vicinity to do so with greater safety to themselves and to each other, as well as to the scow.

Having violated an express rule of navigation, scow 18 D would seem to be an offending vessel, and on the record in this cause we cannot say that her fault did not contribute to the catastrophe. The Moran was towing these two scows tandem on a hawser, 40 to 45 fathoms to the leading scow 15 D, which 18 D followed closely. The Moran displayed her vertical towing lights, three of them, which indicated that she had more than one vessel in tow. The Matthews saw these lights, understood their meaning, and looked for the tow, but could not locate it. The Moran's lights gave timely warning to all approaching her, as the Matthews did, that she had two or more vessels in tow; but they did not indicate whether the towed vessels trailed directly astern of her, or swung off to port or starboard, nor did they indicate where the tow ended. Lights were prescribed by authority to be carried by the towed vessels in order to indicate these facts. Had 18 D carried the lights which the rule required, presumably they would have been seen, and, if seen, would have warned the Matthews that between the vessel that carried them and the tug carrying the three vertical lights there would be found a towing hawser. With such a warning, it may well be that the Matthews would have navigated so as to avoid coming in contact with such hawser, and thus she might have avoided collision with 15 D, which was fastened to it. We cannot hold that the fault of 18 D did not contribute to the collision.

The District Court assessed the damages in the proportions indicated by the Supreme Court. Therefore the decrees are affirmed, with interest and a single bill of costs.