## THE LIZZIE M. WALKER.

### THE VIRGINIA.

(Circuit Court of Appeals, Fourth Circuit.
January 6, 1925.)

Nos. 2303, 2304.

1. **Towage** ⬤⇒19—**Tug, contracting to take full charge of navigation of scow, held responsible for maintaining proper lights thereon.**

Where the owner of a tug contracted to transport a scow, and to take entire charge of its navigation, the owner, having no representative thereon, was responsible for its seaworthiness, and the tug for its navigation and for placing lights thereon necessary for its safety, and the safety of other vessels.

2. **Collision** ⬤⇒95(4)—**Steamer held solely in fault for collision with tow at night.**

A collision at night on a river between a scow in tow and a meeting steamer *held* due solely to the fault of the steamer, which, ignoring the lights on the tug, showing that she had a tow, after passing, turned across her course, striking the side of the scow at right angles. While the tug was also in fault for maintaining only a single light on the scow, such fault did not contribute to the collision.

3. **Collision** ⬤⇒104—**Where fault of one vessel is gross, contributory fault must be clearly shown.**

Where the fault of a vessel for collision with the tow of another is gross, and manifestly the cause of the collision, any doubt as to contributory fault of the towing tug should be resolved in its favor.

Appeals from the District Court of the United States for the District of Maryland, at Baltimore; Morris A. Soper, Judge.

Suit for collision by H. L. Walker, owner of the Scow B, against the Baltimore Transportation Company, owner of the tug Lizzie M. Walker, and the Baltimore, Chesapeake & Atlantic Railway Company, owner of the steamboat Virginia. Decree for libelant against both respondents, and each appeals. Modified.

John H. Skeen, of Baltimore, Md. (Emory, Beeuwkes & Skeen, of Baltimore, Md., on the brief), for Baltimore Transp. Co.

Ralph Robinson, of Baltimore, Md., for Baltimore, C. & A. Ry. Co.

George W. P. Whip, of Baltimore, Md. (Lord & Whip, of Baltimore, Md., on the brief), for H. L. Walker.

Before WOODS, WADDILL, and ROSE, Circuit Judges.

WOODS, Circuit Judge. On the night of January 20, 1923, the tug Lizzie M. Walker, having in tow the empty scow B on a hawser of 300 feet, was steaming up the Choptank river on the eastern store of Maryland. The steamer Virginia, going down the river, struck and sunk the scow. The tug was owned by the Baltimore Transportation Company, the scow by H. L. Walker, and the steamer by the Baltimore, Chesapeake & Atlantic Railway Company. The District Court held the owner of the scow blameless and the owners of both the tug and the steamer at fault.

[1] At the time of the collision there was only one light on the scow. Its owner did not undertake to furnish lights nor did he have any representative on it. The owner of the tug had contracted to transport the scow and to take entire charge of its navigation. Under such conditions the owner of the scow was responsible for its seaworthiness; the tug was responsible for the navigation of the scow and for placing lights necessary for its safety and the safety of other vessels. Sturgis v. Boyer, 24 How. 110, 122, 16 L. Ed. 591; The Connecticut, 103 U. S. 710, 713, 26 L. Ed. 467; Bisso Towboat Co. v. Alabama & New Orleans Transportation Co. (C. C. A.) 271 F. 658, 660; In re Walsh, 136 F. 557, 559, 69 C. C. A. 267. In The Lyndhurst (D. C.) 92 F. 681, The Nettie L. Tice (D. C.) 110 F. 461, The Eugene F. Moran (D. C.), The Charles E. Matthews, The Scows 15D and 18D, 143 F. 187, 154 F. 41, 83 C. C. A. 153, and 170 F. 928, 96 C. C. A. 144, the scows were held liable for collisions due to the absence of lights required by the rules of navigation, for the reason that there were persons on the scows representing their owners. In The Komuk (D. C.) 120 F. 841, where the tow was held liable along with the tug, it does not appear that the owner of the tow had a representative on it. In Foster v. Merchants' & Miners' Transportation Co. (D. C.) 134 F. 964, the tug and tow were held liable for the absence of lights on the tow, but there was no discrimination between them for the reason that they had the same owner.

The contention that the owner of the scow is responsible because he did not provide a place for the lights is not well founded. The evidence showed that the lights could be sufficiently attached with three or four nails and a scantling, and that no permanent fixture was necessary. We think, therefore, the District Judge was right in exempting the owner of the scow and placing the responsibility for the lacking light on the owner of the tug.

[2] The collision occurred about midnight. The night was dark. The velocity of the wind was variously estimated at from 3 to 10 miles an hour. When the

steamer and tug were more than one mile apart the officers of each saw the lights of the other vessel. The one blast signal of the Virginia for port to port passing was assented to by the tug. The officers of the steamer, as the District Judge found, observed, or should have observed, the lights of the tug, indicating that she had a tow in charge, and had ample time to make such change of course as was necessary to pass safely the tug and tow. There was an abundant expanse of deep water on the steamer's starboard side for a change of course. The tug, though the incumbered vessel, changed its course to the south so as to give a wider passage. Notwithstanding this advantageous change by the tug, the Virginia, after giving the passing signal, changed her course so little, if at all, that she cleared the tug by only 150 feet at the most. This too, with the knowledge of the presence of the tow and of the change of course of the tug. It was obvious to the navigator of the Virginia, if he observed at all, that the wind would drive the tow to the leeward of the tug and towards the course of the steamer, and that a passing within 150 feet of the tug would almost inevitably result in collision with the tow. No excuse appears for this reckless navigation on the part of the steamer which brought about the collision. The liability of the steamer is therefore beyond doubt.

Did the tug negligently contribute to the collision? The evidence shows conclusively the tug's violation of the rule of navigation requiring white lights to be carried at each end of the scow. There was a light on the after starboard corner of the scow, but none on the bow end. The towing lights on a tug give notice to other vessels of the presence of a tow; the two lights required on the tow itself enable observers on other vessels to locate the tow more accurately. One light on a tow does not enable an observer on another vessel to tell whether the light is forward or aft. Thus the observers on the Virginia may have been deceived as to the location of the scow by 100 feet and 10 inches, the length of the scow. But when they saw the towing lights of the tug and the one light of the scow they could not have been misled as to the location of the approaching scow by more than its length. Assuming that the navigating officers of the steamer were deceived by the presence of only one light into the belief that the scow was 100 feet further out of the course of the steamer than it really was, that does

not show that the absence of the second required light contributed to the collision. The argument that it did is answered by the significant fact that the steamer struck the scow at an almost exact right angle with its side. This shows plainly that the navigators of the steamer, totally ignoring the presence of the scow of which the towing light of the tug gave them notice, took their course directly across the wake of the tug. Had they recognized the presence of the tow and taken a course parallel to its course and that of the tug the steamer could not have had a right angle collision with the scow. When the navigators of the Virginia totally disregarded the towing lights which were on the tug and scow, there is no ground for them to say they would have heeded if there had been another light on the scow.

The unexplained grounding of the steamer after the collision is also evidence of the incompetency or negligence of her navigators.

It is true that the failure of the tug to place the statutory lights on the scow was a serious fault, and, if the circumstances showed that it could have contributed to the collision, all doubt would be solved against the tug, and the absence of the light would be held a proximate cause of the collision.

[3] The unexplained close and obviously dangerous approach of the steamer to the tug with no reduction of speed, the disregard of the tug's towing lights, the course of the steamer astern of the tug, the right angle collision with the scow taken together, show a reckless disregard of the rules of safety on the part of the steamer. This recklessness, and not the absence of another light on the scow, brought about the collision. The fault of the steamer being so gross, and so manifestly the cause of the collision, any doubt of the contribution of the fault of the tug for the collision should be solved in its favor. The Victory & The Plymothian, 168 U. S. 410, 423, 18 S. Ct. 149, 42 L. Ed. 519; The Umbria, 166 U. S. 404, 409, 17 S. Ct. 610, 41 L. Ed. 1053.

We are reluctant to differ with the District Judge as to the effect of the fault of the tug, but, since we are in agreement with him as to the facts, we feel the more free to draw from them a different inference. We think the steamer was solely responsible for the collision, and the decree of the District Court is modified accordingly.

Modified.