## THE SOCONY NO. 23.

## STANDARD TRANSP. CO. v. GILLEN TOWING CORPORATION.

District Court, E. D. New York.
Feb. 6, 1930.

Haight, Smith, Griffin & Deming, of New York City (James McKown, Jr., of New York City, of counsel), for Gillen Towing Corporation.

Peter M. Speer, of New York City (Paul Speer, of New York City, of counsel), for Standard Transportation Co.

INCH, District Judge.

About 2 o'clock in the afternoon of June 13, 1923, a collision occurred, between the tug Henry Gillen and a barge in tow alongside of the tug Socony No. 23. The respective owners of these boats have sued each other, and the issues raised by the libel and cross-libel, etc., have, by stipulation, been duly tried together. One decision will dispose of the entire matter.

As usual the question presented is largely one of fact. The solution depends upon oral testimony, including the probabilities of the various stories, the interest and demeanor of the witnesses, etc.

After careful consideration I have come to the following conclusions of fact:

The tug Gillon is a high-pressure tug, 400 pounds horse power, about 100 feet long, 26 feet wide, of the regular harbor tugboat type. At the time in question she was light.

About 2 o'clock in the afternoon, of the day in question, tide about at the end of the ebb, with little or no wind, weather clear, and visibility excellent, she was going up Newtown creek approaching the Vernon Avenue Bridge, which divides Queens county from Kings county. She blew for the bridge to open.

This bridge is a jackknife bridge with two leaves, one, which we will call the Hunterspoint or Queens county side, and the other the Greenpoint or Kings county side. There had been some repair work done on this bridge, but at the time in question this had been finished, and I find nothing in the record to indicate that the question of this work is material here. This bridge is used by street traffic. The bridge tender, on the approach of a vessel, first sees that this traffic is arranged for in safety. He also, as was done in this case, endeavors, if two vessels, in opposite directions, are approaching, to so arrange the opening to accommodate both, at the same time.

Consequently, Dunn, the bridge tender, after he had seen the Gillen, also saw the Socony No. 23, about 500 feet away, approaching the bridge in the opposite direction, and, when she was about 300 feet away, the Socony also blew for the bridge to open. The Socony had, on her starboard side, a large barge, loaded with one tier of barrels, "laying flat." This barge had a square bow and stern, with a somewhat high mast in her middle.

As the bridge did not open at once, owing to this waiting of Dunn, "until I could get both of them with one opening of the bridge," and as the Gillen had apparently arrived first, she stopped, and "laid outside a bunch of spiles, that was about in the center channel."

The Socony and her barge, on the contrary, continued on, "was drifting towards the bridge and when she was about 75 feet away the bridge started to go up."

While the testimony of the various witnesses brings into the record a number of other conditions relating to the two draws, we have substantially the above situation. That is, the Gillen tug light and stopped; the Socony No. 23, with a heavy barge alongside, slowly drifting towards the draw in question.

Both leaves of the bridge opened, but the question of whether one or the other draw should have been taken does not seem to me to be the proximate cause of the collision that subsequently occurred.

The direct cause of the collision was the careless act on the part of the master of the Gillen tug. This is shown in the following facts:

Both the Gillen tug captain and the captain of the Socony No. 23 had no difficulty in seeing each other. Fullerton, master

of the Gillen, said he saw the Socony No. 23 and her barge, and that to him "she seemed to be laying still, about 200 or 250 feet above the bridge."

Sinclair, master of the Socony No. 23, said that when he was about 300 feet away from the bridge, "I then noticed a tug boat (the Gillen) on the other side. She was in the center of the creek."

Fullerton was mistaken in thinking that the Socony No. 23 was still, for Sinclair, master of the Socony No. 23, testified "he still had some headway," and this is confirmed by the disinterested witness Dunn, the bridge tender, who stated that the Socony No. 23 was at all times "drifting towards the bridge."

The Socony No. 23 blew one whistle to the Gillen which the Gillen answered. Here again I do not think that the conflict as to whistles is important, as both captains saw each other clearly and what actually occurred was not the result of any misunderstanding as to whistle signals.

Naturally both tug captains were anxious to get through the bridge and be on their way. If those on the tug Gillen had observed carefully, they would have seen the Socony No. 23 and her tow were moving.

Accordingly, when the Hunterspoint leaf started to open, the master of the Gillen "started through the bridge which was then halfway up." He explains this hurry on his part by a statement that his tug had only a flagstaff, and smokestack, while the high mast of the barge, in tow of the Socony No. 23, would require the bridge leaf to be higher than necessary for the Gillen.

It was apparent to all concerned that "there wasn't room for three vessels to pass."

The reasonably to be expected result of this careless hurry on the part of the captain of the Gillen occurred.

The Gillen collided with the port bow of the Socony's barge, which was projecting a few feet beyond the bow of the Socony, while the Socony "was up against the crib work" of the draw. "She couldn't get over any further."

The testimony given by Fullerton, master of the Gillen, on his recross-examination, gives the true explanation: "There was no need for us to wait. We were quarter of the ways through when the bridge went up and he was about 200 feet away from the draw. He blew just as the bridge went up. I didn't start until he did blow. I *could not see why we should back out because we could get through ahead of him.* He could have avoided us if he had laid still for about a minute. I went in before the draw was half open. He couldn't go in before the draw was all the way up."

In other words, while there were other and to be expected explanations for his careless act, none of these are sufficient or so credible as to overshadow the plain fact that the master of the Gillen decided to "get the jump" on the Socony No. 23, and miscalculated, trying to first squeeze through this draw, which he knew would not accommodate the Gillen, the Socony, and her barge alongside.

This was careless navigation on the part of the Gillen, and the court need not look further for the direct cause of the collision. The City of New York, 147 U. S. 72, 13 S. Ct. 211, 37 L. Ed. 84; The Lizzie M. Walker (C. C. A.) 3 F.(2d) 921.

Consequently I dismiss the libel of the Gillen Towing Corporation. I grant a decree in favor of the libelant, Standard Transportation Company.