**LOUISVILLE & NASHVILLE RAILROAD COMPANY, a Corporation, Libelant,**

v.

**THE Tugboat COMMANDER, her tackle, apparel, furniture, engines, boilers and machinery, and Mobile Towing & Wrecking Company, Inc., a Corporation, Respondents.**

**LOUISVILLE & NASHVILLE RAILROAD COMPANY, a Corporation, Libelant,**

v.

**THE Tugboat JOSEPH M. WALSH, her tackle, apparel, furniture, engines, boilers and machinery, and Mobile Towing & Wrecking Company, Inc., a Corporation, Respondents.**

Nos. 2674 and 2715.

United States District Court
S. D. Alabama, S. D.

Nov. 21, 1961.

Alexander F. Lankford III, of Hand, Arendall, Bedsole, Greaves & Johnston, Mobile, Ala., for libelant.

Vincent F. Kilborn, Mobile, Ala., for respondents.

DANIEL HOLCOMBE THOMAS, District Judge.

These actions arose out of two separate incidents which occurred when the tugs, which were towing vessels under directions from a harbor pilot, collided with the fender system of a railroad bridge over Chickasaw Creek located in Mobile County, Alabama, and within the admiralty and maritime jurisdiction of this Court. Libelant in each case seeks in rem relief from the tugs, and/or damages from the in personam respondent, Mobile Towing and Wrecking Company. Because of common questions of law and

fact the cases were ordered consolidated for trial.

### Findings of Fact

Chickasaw Creek is a navigable stream which, at the location here in issue, flows generally from west to east. A railroad swing bridge, owned and maintained by the libelant, spans the Creek just west of where the Creek joins the Mobile River, also a navigable waterway. The River flows generally from north to south at this point; the railroad runs parallel to the River.

A dredged ship channel runs up Mobile River, then turns west through the south side of the open span of the bridge and continues up Chickasaw Creek. Protecting the south side of the bridge and bordering the south side of the channel is a wooden fender system approximately 132 feet long. The center pier and the swing portion of the bridge while open are protected by the north fender system which is about 512 feet long. The minimum horizontal clearance between these two fender systems when the bridge is open is 132 feet. Both of these fender systems are owned and maintained by the plaintiff.

The libels charge that on one occasion the tug Commander ran into and damaged the south fender system; and, that on a separate occasion the tug Joseph M. Walsh ran into and damaged the north fender system.

### Tug Commander

On November 14, 1957, at about 9:30 a. m., the ship Ideal X was being towed downstream on Chickasaw Creek. The Ideal X is a T-2 type tanker with an overall length of 523 feet, a beam of 68.2 feet, and a molded depth of 39.21 feet. She was a dead ship and riding high in the water. The flotilla, proceeding at about 2 m. p. h., consisted of the Ideal X and three tugs. Two of these tugs provided motive power and steering; the third tug, the Commander, having a beam of 24 feet, was under the starboard bow of the Ideal X with a bowline up to that vessel.

As the flotilla, favoring the right side of the channel, proceeded through the open span of the bridge, the stern of the Ideal X sheered to starboard. The tug Commander dropped back on the starboard side of the vessel and nosed in against her. The starboard side of the Commander rubbed against the south fender system with sufficient force to crack several of the creosote timber pile bents. Damages on this occasion amounted to $65.13.

At the time of this collision there were no unfavorable conditions of wind or tide. The sheering of the vessel was probably caused by the unusual current which is created where the Creek and the River merge, plus the fact that there was a flood tide.

### Tug Joseph M. Walsh

On June 10, 1958, at about 11:15 a. m., the U.S.N.S. Kennebago, a T-2 tanker having the same hull dimensions as the Ideal X, was being towed upstream on the Mobile River. Assisting the Kennebago, a dead ship, were three tugs, one of which, the Joseph M. Walsh with a beam of 32 feet, was lashed up under the vessel's starboard quarter, providing the motive power. The flotilla was proceeding at a speed of about 2 m. p. h.

The flotilla turned westwardly and proceeded through the open span of the swing bridge and thence up the Chickasaw Creek. Here again the vessels were favoring the right side of the channel. As the vessels proceeded through the bridge, the starboard side of the Joseph M. Walsh struck the north fender system at a point just east of the center pier and continued scraping the fender system for a short distance west of the center pier. Damage to this fender system amounted to $1,781.31.

At the time of this collision the tug John T. Walsh was out at about a 45 degree angle off the port bow of the Kennebago, presumably in an effort to get the vessel back toward the center of the channel. The harbor pilot on board the Kennebago, who was in charge of the flotilla, testified as follows:

"I asked Captain Ward, (master of the tug Joseph M. Walsh] 'Do you look like you are clear?' He said, 'It

looks like it, but I might not be.' He backed up the ship, that threw it away from the bridge, when it stopped she drifted over against the bridge and rubbed that. That is how come us to stop to see if it had done any damage. We could not see any at all.

"Q. Do you know if he followed your orders in reversing his engines? A. Yes, sir.

"Q. Whatever he did, he did under your supervision, at your direction and your orders, in strict obedience to them? A. Yes, sir."

At the time of this collision, the conditions of wind, tide, current, and visibility were good and did not adversely affect the navigation of the channel.

## Discussion

■ In each case libelant charges negligence on the part of the tug and those in charge of her. Liability is further sought to be imposed under the familiar presumption that fault attaches to the moving vessel when such vessel strikes a stationary object unless the respondent overcomes this presumption. The Louisiana, 3 Wall. 164, 70 U.S. 164, 18 L.Ed. 85; West India Fruit & S.S. Co. v. Raymond, 5 Cir., 190 F.2d 673. In addition to denying negligence, respondent argues that the fender system was at fault, inasmuch as it constituted an unlawful structure and was therefore a menace to navigation. For the reasons stated below, the Court finds it unnecessary to discuss the lawfulness of the fender system.

■ This situation is similar in many respects to the case of United Fruit Co. v. Mobile Towing & Wrecking Co., 5 Cir., 177 F.Supp. 297, decided by this Court a short time ago. In that case the liability of a tug and that of her owner were thoroughly considered. Here, as there, Mobile Towing must be exonerated from liability because the tugs were not negligent. The tugs were operated under orders from the harbor pilot on board the tow in each instance. There is not the slightest evidence that his orders were disobeyed or improperly carried out.

■ Libelant seeks to invoke the presumption that the moving vessel was at fault. The Louisiana, supra. The benefit of this presumption does not apply in an action against a tug whose only duty under the circumstances was to follow the orders and directions of the harbor pilot. In re Walsh, 5 Cir., 136 F. 557. The decision to favor the right side of the channel rested on the harbor pilot. His reasons for so doing can reasonably be attributed to his sixteen years' experience with conditions in Mobile Harbor. It would be manifestly improper for the tugs, whose function was to provide motive power and steering requirements, to assume control of the flotilla and direct the movement of the vessel under tow. Nor is there any evidence to justify a finding that the tug was aware of the approaching danger and should have initiated an evasive maneuver.

While there is some contradiction of facts in the testimony offered by the various witnesses, the Court is satisfied that these collisions did occur and resulted in the damages claimed. But whose fault caused the damages? Surely it was not that of the tugs, their masters, or any of their crew members. Beyond that determination I need not go since there are no other parties named as respondent in the libels.

## Conclusions of Law

The subject matter of these suits, a marine collision, and the parties hereto, are within the admiralty and maritime jurisdiction of this Court.

Libelant having failed to show any fault on the part of the respondents, a decree will be entered dismissing the libels.