**M. A. SMITH DRILLING CORPORATION**

v.

**TUG CAPTAIN AL, her engine, tackle and apparel, and Alphonse Allemand;**

**TUG SKIPPER ANN, her engine, tackle and apparel, and Paul Danos;**

**TUG LITTLE JIM, her engine, tackle and apparel, and Orleans Pitre; and**

**TUG BETTY LOU, her engine, tackle and apparel, and Ernest Moise and Harold Collins.**

**No. 4309, Division "C".**

United States District Court
E. D. Louisiana,
New Orleans Division.
June 2, 1964.

Joseph V. Ferguson, II, Cobb & Wright, New Orleans, La., for libelant.

Francis Emmett, Terriberry, Rault, Carroll, Yancey & Farrell, New Orleans, La., for Tug Captain Al and Alphonse Allemand.

George A. Frilot, III, Lemle & Kelleher, New Orleans, La., for Tug Skipper Ann and Paul Danos.

James B. Kemp, Jr., Phelps, Dunbar, Marks, Claverie & Sims, New Orleans, La., for Tug Little Jim and Orleans Pitre and Tug Betty Lou and Ernest Moise and Harold Collins.

WEST, District Judge.

Libelant sues for damages to its drilling barge resulting from a collision which occurred in Louisiana's Intracoastal Canal during the early morning of March 18, 1959. At the time of the collision, libelant's barge, known as the Smith Barge RIG NO. 4, was being towed by two tugs, the CAPTAIN AL, and the SKIPPER ANN. During a passing maneuver, it collided with the drilling barge known as the O. W. DYER II, which, at that time, was being towed in the opposite direction in the Intracoastal Canal by the two tugs, the LITTLE JIM and the BETTY LOU. Libelant brings this suit in admiralty against the tug CAPTAIN AL and her owner, Alphonse Allemand, the tug SKIPPER ANN and her owner, Paul Danos, the tug LITTLE JIM and her owner, Orleans Pitre, and the tug BETTY LOU and her owners, Ernest Moise and Harold Collins. It is the opinion of this Court that the damage to libelant's RIG NO. 4 was caused solely and entirely by the fault and negligence of the tug CAPTAIN AL, and its captain and owner, Alphonse Allemand, and that all respondents herein, except the tug CAPTAIN AL and her owner, Alphonse Allemand, should be exonerated from liability. In support of this conclusion, the Court makes the following Findings of Fact and Conclusions of Law.

FINDINGS OF FACT

1. The tug CAPTAIN AL, owned by respondent, Alphonse Allemand, is 55 feet long, 17 feet wide, with twin screws powered by two 300 h. p. G.M. diesel engines. She is pilothouse controlled, and carries a crew of three men.

2. The tug SKIPPER ANN, owned by respondent, Paul Danos, is 52 feet long, 16 feet wide, with a single screw powered by one 300 h. p. G.M. diesel engine. She is pilothouse controlled.

3. Libelant's barge, RIG NO. 4, which was being towed at the time of the collision by the CAPTAIN AL and the SKIPPER ANN, is 165 feet long, 40 feet wide, and 14 feet deep, with a draft of 5.5 feet. It has no motive power, and no independent means of steerage. It is what is referred to as a "dumb barge."

4. Immediately prior to the collision, the CAPTAIN AL had the RIG NO. 4 in tow, being assisted by the SKIPPER ANN. RIG NO. 4 was made fast to the CAPTAIN AL by a tow line leading out from the towing bitt on the stern of the CAPTAIN AL about 8 or 10 feet. This tow line was tied to a two part bridle, made of 7/8ths inch wire cable. The two parts of this bridle were each 35 feet long, one being made fast to a towing bitt on the starboard corner of the buoy end of the barge, and one being made fast to a towing bitt on the port corner of the buoy end of the barge. This placed the bow of the buoy end of the barge somewhere between 38 and 40 feet astern of the stern of the CAPTAIN AL. The RIG NO. 4 had between 2½ and 3 feet of freeboard.

5. The SKIPPER ANN, acting only in the capacity of a "helper tug," furnishing tug power only, in obedience to

orders received from the CAPTAIN AL, was made up on the starboard side of the CAPTAIN AL and was made fast to the CAPTAIN AL by use of a 6 inch bow line and two 6 inch quarter lines. She was made up only to the CAPTAIN AL and was in no way tied to the barge RIG NO. 4.

6. As thus made up, the CAPTAIN AL and her tow, assisted by the SKIPPER ANN, were proceeding in a westerly direction through the Intracoastal Canal.

7. At the same time, proceeding in an easterly direction, were the tugs LITTLE JIM and BETTY LOU, with their tow, the O. W. DYER II.

8. The tug BETTY LOU was a wooden hull, 50 feet long, 15½ feet wide. She had a single screw, powered by one 300 h. p. diesel engine, and was pilothouse controlled. The tug LITTLE JIM was of comparable size, powered by one 300 h. p. diesel, with a single screw, pilothouse controlled.

9. The Dyer rig, being towed by the BETTY LOU and the LITTLE JIM, consisted of a drilling barge, about 100 to 120 feet long, and 45 feet wide, together with a power barge about 80 to 90 feet long. The power barge was made up ahead of the drilling barge, and was made fast by use of steel cables. The tugs and their tow were made up in tandem, with the BETTY LOU leading, and in charge, the LITTLE JIM, acting as helper tug, following, about two feet astern, and the power barge and drilling rig, lashed together, following about four feet astern of the LITTLE JIM.

10. The BETTY LOU and the LITTLE JIM had picked up their tow, the O. W. DYER II, at Anahuac, Texas, in the north end of Galveston Bay, and were headed through the Intracoastal Canal for Intracoastal City, 180 miles away. They had already successfully traversed, without incident, over 100 miles of the way before this collision occurred.

11. Prior to the collision, another tow was proceeding westerly in the canal ahead of the CAPTAIN AL and her tow.

This tow was known as the BIG M, and was about 200 to 225 feet long, and about 75 to 80 feet wide.

12. There are locks, known as Vermillion Locks, located in the waterway at about Mile Post 163, which are about 1182 feet long. When the locks are not in use, they are by-passed by a by-pass slip which is between 1700 and 2000 feet long. This by-pass was being used at the time here involved.

13. The BETTY LOU, towing the Dyer rig, was approaching the by-pass, going east. When she was some five miles from the by-pass, she saw the BIG M coming out of the by-pass, proceeding west. Radio contact was immediately established between the BETTY LOU and the BIG M, and data on the size and speed of the respective tows was exchanged. They also, at that time, agreed on a one whistle passing (port to port). A one whistle passing signal was then exchanged, and the two tows passed each other without incident.

14. While in the process of passing the BIG M, the BETTY LOU heard, on her radio, the CAPTAIN AL talking to the SKIPPER ANN. These tugs, with their tow the RIG NO. 4, were at that time proceeding west through the by-pass around Vermillion Locks. The BETTY LOU, knowing that the by-pass was only about 60 to 70 feet wide, did not want to meet the CAPTAIN AL and her tow in the by-pass, so she requested by radio that the CAPTAIN AL advise her as soon as she, the CAPTAIN AL, had cleared the by-pass. At the same time, information regarding the size, nature and speed of the respective tows was exchanged. At that time, the BETTY LOU was about 2½ miles from the west end of the by-pass.

15. Shortly thereafter, the CAPTAIN AL with her tow came out the west end of the by-pass, into the main waterway and called the BETTY LOU by radio. They agreed on a one whistle (port to port) passing. The two tows assumed their proper position for passing in the channel, each on her proper side, and

when they were about 1,000 yards apart, they exchanged a one whistle signal. At that time the BETTY LOU and her tow were about 25 feet off the right hand or south bank of the canal. The canal at this point is about 200 feet wide. The starboard side of the RIG NO. 4 was about 15 feet from its right hand or north bank of the canal. The weather was fair, and a current was running east about 2 miles per hour. The CAPTAIN AL and her tow were moving against the current, making about 3 to 3½ miles per hour over the ground. The BETTY LOU and her tow were moving with the current making about 4 to 4½ miles per hour over the ground. The canal at this point was perfectly straight. Before proceeding through the by-pass, the SKIPPER ANN had cut loose from the CAPTAIN AL and had dropped astern of the tow and thus followed the CAPTAIN AL and her tow through the by-pass. But by the time the CAPTAIN AL and her tow had proceeded 1,000 or 2,000 feet out of the by-pass, the SKIPPER ANN had come alongside the CAPTAIN AL and had made up, as previously described, to the starboard side of the CAPTAIN AL. She was in this position at the time of the collision.

16. When the CAPTAIN AL and the BETTY LOU first sighted each other, and when they exchanged passing signals, they were each on their proper side of the canal proceeding on a straight course in their respective directions.

17. While the testimony is hopelessly in conflict as to the actual happening of the collision itself, the Court, after having seen and heard the various witnesses who testified during this trial, finds, as a fact, that when the two tows were about 300 feet or less apart, the CAPTAIN AL and the SKIPPER ANN, made fast to each other, for some unexplained reason, suddenly sheered to port, crossing the centerline of the canal, and headed toward the BETTY LOU and her tow. This maneuver, of course, caused the RIG NO. 4 to turn also to port, and angle across the canal, thus heading toward the BETTY LOU and her tow.

In an effort to straighten the tow, the CAPTAIN AL then turned back to starboard, and in so doing, her stern passed close to the bow of the BETTY LOU. The BETTY LOU turned slightly to starboard, but was restricted in her movement because of the proximity of the canal bank on her starboard side. The RIG NO. 4 continued on at an angle, the CAPTAIN AL being unable to straighten it up immediately, and as it proceeded on at an angle, it missed the BETTY LOU, but its bow scraped some of the tire fenders off of the port side of the LITTLE JIM, the tug following the BETTY LOU, and then its port bow corner struck the port bow corner of the Dyer rig, causing damage to the RIG NO. 4 here complained of. The collision occurred at approximately Mile Post 166.

18. Immediately after the collision, the RIG NO. 4 was turned around in the canal, headed east, and the Dyer rig was aground on its starboard bank of the canal. The port bridle cable running from the stern of the CAPTAIN AL to the port bow corner of the RIG NO. 4 had parted. There is conflicting evidence as to whether or not the RIG NO. 4 actually struck the LITTLE JIM before it collided with the Dyer rig. Some witnesses say it struck the LITTLE JIM and actually pushed it against the canal bank, while others say they never came into contact with each other. While it is immaterial to a decision of this case, the Court is inclined to believe that the RIG NO. 4 did in fact strike the LITTLE JIM before it ultimately collided with the Dyer rig.

19. Neither the BETTY LOU nor the LITTLE JIM, nor their owners or captains, were guilty of any negligence whatsoever which in any way caused or contributed to the cause of this collision and the resulting damage.

20. The SKIPPER ANN was, at the time of the collision, acting only in the capacity of a helper tug, performing only the functions and duties ordered by the CAPTAIN AL. She obeyed all orders of the CAPTAIN AL, and there is a complete absence of any testimony that could

in any way indicate that she or her captain or owner were in any way guilty of any negligence causing or contributing to the cause of this collision.

21. The collision between the Smith RIG NO. 4 and the Dyer RIG NO. 2, with its resulting damage to the Smith RIG NO. 4, was caused solely and entirely by the fault and negligence of the CAPTAIN AL and her owner and captain, Alphonse Allemand.

### CONCLUSIONS OF LAW

1. This Court has jurisdiction over this matter, and venue is properly laid in the Eastern District of Louisiana. 28 U.S.C.A. § 1333.

 2. The testimony in this case preponderates against the CAPTAIN AL and her owner and captain, Alphonse Allemand, and thus as a matter of law, the Court concludes that the collision and resulting damage to the RIG NO. 4 were caused by the negligence of the CAPTAIN AL and her owner and captain, Alphonse Allemand. The fact that the CAPTAIN AL suddenly and for some unexplained reason, sheered to port, into the path of the BETTY LOU and her tow, creates an inference of negligence which, in the opinion of this Court, the CAPTAIN AL and her captain have failed to successfully rebut. Atkins v. Lorentzen, 328 F.2d 66 (CA 5 1964). It was this sheering to port by the CAPTAIN AL that was the sole and only cause of the collision and resulting damage to the Smith RIG NO. 4.

3. The SKIPPER ANN, being used at the time of the collision as a helper tug, taking her orders from the CAPTAIN AL, and there being no evidence presented to show any negligence whatsoever on her part causing or contributing to the cause of this collision and resulting damage, must be completely exonerated from liability. In re Walsh, 136 F. 557 (CA 5 1905); Moran Towing & Transportation Co. v. Empresa Hondurena de Vapores, et al., 194 F.2d 629 (CA 5 1952).

4. The BETTY LOU, and her owners, Ernest Moise and Harold Collins, and the LITTLE JIM and her owner, Orleans Pitre, being completely free of negligence herein, are not liable for all or any part of the damage to the Smith RIG NO. 4 caused by this collision.

5. Judgment will be rendered herein in favor of libelant, M. A. Smith Drilling Corporation, and against the tug CAPTAIN AL and her owner, Alphonse Allemand, only, for the full amount of damages to the RIG NO. 4 caused by this collision. Judgment will also be rendered exonerating all other respondents from liability herein. In the event the amount of damage occasioned by this collision cannot be agreed upon between libelant and respondent, Captain Alphonse Allemand, further hearing will be held at the request of the parties hereto on the question of quantum.